[Cite as *State v. Hicks*, 2011-Ohio-2780.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95169**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANDRE HICKS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533926

**BEFORE:** S. Gallagher, J., Celebrezze, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** June 9, 2011
**ATTORNEYS FOR APPELLANT**

Robert Tobik
Chief Public Defender

BY:   Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Robert Botnick
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶ 1}   Appellant Andre Hicks ("Hicks") appeals his convictions in Cuyahoga County Common Pleas Court Case No. CR-533926 of one count of kidnapping and one count of felonious assault with a deadly weapon.   The jury acquitted Hicks of several other charges. The trial court sentenced Hicks to four years on each count, to be served concurrently.   For

the following reasons, we reverse and vacate the trial court's sentence and remand for further proceedings consistent with this opinion.

{¶ 2} Hicks and an individual known as "D" approached Demetrius Williams ("Williams") in the second-floor room of a mutual friend's house. Hicks and "D" accused Williams of stealing drugs. Moments later, a masked man, later identified as Hicks's co-defendant Brandon Blackman ("Blackman"), entered the room brandishing a chrome revolver and began pistol-whipping Williams. According to Williams, Hicks and "D" attacked another individual in the room who was able to escape. After the other's escape, Hicks and "D" turned their attention toward Williams. During the attack, Williams attempted to escape the room but was prevented by Hicks and "D." Williams eventually escaped, fled the house, and ran home.

{¶ 3} After the joint trial of Hicks and Blackman, the jury returned a guilty verdict against Hicks as to two of seven counts: kidnapping and felonious assault with a deadly weapon. Blackman was found guilty of felonious assault, kidnapping, and a firearm specification. The jury acquitted Hicks of aggravated robbery and other felonious assault charges, and all firearm specifications. The trial court sentenced Hicks and the co-defendant Blackman simultaneously and sentenced Hicks to four years for each guilty count and imposed the terms concurrently. When announcing Blackman's sentence to the firearm specification and kidnapping and felonious assault charges, the court stated the latter two charges were not allied offenses. The trial court further found the kidnapping was committed with a separate

animus to warrant a separate sentence. No mention of allied offenses was made during the immediately ensuing announcement of Hicks's sentence. The trial court did not impose court costs at sentencing, but included court costs in the sentencing entry and acknowledged that Hicks was indigent.

{¶ 4} Hicks raises two assignments of error. His first assignment of error is as follows: "The trial court erred at sentencing by failing to merge the kidnapping count with the felonious assault count and by imposing concurrent sentences on both." Hicks's first assignment of error is sustained.

{¶ 5} The record reflects that Hicks never raised the issue of merger in the trial court and therefore has waived all but plain error on appeal. *State v. Russell*, Cuyahoga App. No. 83699, 2004-Ohio-5031, citing *State v. Smith*, 80 Ohio St.3d 89, 118, 1997-Ohio-355, 684 N.E.2d 668. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Plain error exists only if but for the error, the outcome of the trial clearly would have been otherwise, and is applied under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Citation and quotations omitted.) *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61. The imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

{¶ 6} The legislature enacted R.C. 2941.25 to uphold double jeopardy principles. R.C. 2941.25 provides as follows:

> "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 7} The Ohio Supreme Court's latest incarnation of analysis in effectuating R.C. 2941.25 came in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Supreme Court overruled *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, and established, through a two-tiered test, that the conduct of the accused must be considered when determining whether offenses are allied offenses of similar import subject to merger.

{¶ 8} The first inquiry focuses on whether it is possible to commit multiple offenses with the same conduct. *Johnson*, 128 Ohio St.3d 153, at ¶ 48. If the offenses "correspond to such a degree that the *conduct of the defendant* constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." (Emphasis added.) Id. It is not necessary that both crimes are always committed by the same conduct,

only whether it is possible for the defendant's conduct to result in the commission of both offenses.   Id.

{¶ 9}   The first tier of this analysis is fairly straightforward.   Prior to *Johnson*, courts determined whether offenses were allied based on an abstract inquiry into the statutory elements of the offenses.   The plurality in *Johnson* abandoned this approach.   Id. at ¶ 47. We note, however, Justice O'Connor maintained in her concurring opinion that *Rance* was overruled "inasmuch as it requires a comparison of the elements of the offenses *solely* in the abstract."   (Emphasis added.)   Id. at ¶ 68.   While abstract comparisons are no longer required, courts must still use the legal elements to provide a context for examining the offender's conduct in relation to the offenses.   In our view, the new *Johnson* test did not completely eliminate consideration of the legal elements; it simply made the offender's conduct the lynchpin of the analysis.   Thus, the reviewing court uses the elements of the offenses as guideposts to measure the defendant's conduct as it relates to the offenses in determining whether multiple offenses could have been committed by the same conduct.

{¶ 10} In abandoning the use of abstract comparisons, prior judicial determinations that offenses are allied may be helpful, but are no longer dispositive.   Contra *State v. McCullough*, Fayette App. Nos. CA2010-04-006 and CA2010-04-008, 2011-Ohio-992, ¶ 17 (relying on prior determinations that two offenses were allied to satisfy the first tier of the *Johnson* test).   The same combinations of offenses may not always be allied for the purposes of the individual case.   Post *Johnson*, courts must undertake a case-by-case inquiry as to

whether the defendant's conduct can constitute the commission of more than one charged offense — remedying the criticism that *Rance* was a rigid, one-size-fits-all approach. *Johnson*, 128 Ohio St.3d 153, at ¶ 82 (O'Donnell, J., concurring). If it is possible to commit both offenses with the same conduct, then the court must find that the offenses are allied offenses of similar import. This, however, does not end the analysis.

{¶ 11} The second tier of the *Johnson* test requires the court to look at the "state of mind" of the offender to determine if the offender acted with a separate animus or purpose in committing two or more offenses. This is the more difficult analysis in the *Johnson* test, notably absent from which is any tool, method, or test for determining when someone acts with a separate purpose or animus or, for that matter, any framework to aid in this determination. For this purpose, we rely on the following guidelines to analyze whether kidnapping and an offense of similar import are committed with separate animus:

> **"(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;**

> **"(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."**

*State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus. The focus in *Logan* is on the characteristics of the restraint. If the restraint or movement is incidental to the

underlying offense, the focus turns to whether the restraint exposes the victim to an increased risk of harm separate from the underlying offense.

{¶ 12} Succinctly stated, "[i]n *Logan* and subsequent cases, prolonged restraint, secretive confinement, and substantial movement apart from that involved in the other crime were factors necessary to establish a separate animus as to each offense sufficient to support separate convictions." (Internal citations omitted.) *State v. Lynch*, 98 Ohio St.3d 514, 536, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 134. According to *Logan* and its progeny, the conduct of the offender is analytically tied to the offender's state of mind. *Logan*, 60 Ohio St.2d 126. In other words, we look to the offender's conduct to determine his state of mind. In *Logan,* the Ohio Supreme Court held that the offender's conduct in forcing the victim into an alley, around a corner, and down a flight of stairs before raping her at knife point was committed without a separate animus. The court found that the movement was slight, the detention brief, and the victim was released immediately after the commission of the underlying crime, compelling the court's conclusion that the kidnapping was incidental to the rape. Id. at 135.

{¶ 13} In addition to the focus on the characteristics of the restraint, a separate animus exists if the asportation or restraint of the victim subjects him to a substantial increase in risk of harm separate from the underlying crime. *State v. Johnson*, 88 Ohio St.3d 95, 113, 2000-Ohio-276, 723 N.E.2d 1054; *Logan*, 60 Ohio St.2d at 135. For example, in *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 140-143, the defendant tied

the victim to the leg of the bathtub after raping her and then set the house on fire. The defendant argued the rape and kidnapping charges, predicated on the act of tying the victim to the bathtub, should have been merged. The Ohio Supreme Court found the restraint subjected the victim to a substantial increase in risk of harm, due to the fire, separate from the harms associated with the rape. The kidnapping was therefore committed with a separate animus. Id.

{¶ 14} If the restraint is not incidental to the underlying offense or exposes the victim to a substantial increase in harm, then the defendant's conduct is deemed to have been committed with a separate animus. Where a court finds that the offenses were committed separately or with a separate animus for each offense, the result is that the allied offenses will not merge and the defendant can be sentenced on each.[1]

{¶ 15} Turning to the facts of the current case, Hicks was convicted of kidnapping, in violation of R.C. 2905.01(A)(3), which provides that "[n]o person, by force, threat, or deception, * * * by any means, shall * * * restrain the liberty of the other person, [t]o terrorize, or to inflict serious physical harm on the victim or another." Hicks was also

---

[1] The separate animus determination is a fact intensive inquiry, and prosecutors and defense counsel will have to develop the record in each case to aid the trial court in its determination of whether allied offenses should or should not merge. Although the determination is made at sentencing, this does not preclude counsel from making an evidentiary record either at the time of a plea or during a trial to aid the trial court's analysis. The court is free at sentencing to consider all aspects of the case from whatever relevant sources in determining either aspect of the two-tiered *Johnson* test. Since the determination of whether the offenses merge is a sentencing issue, the trial court need not rely on the formalities of evidentiary rules when making the determination, although

convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶ 16} The offenses in the current case were based on Hicks's action in attacking and/or holding the victim while another offender attacked the victim. When the victim tried to flee, Hicks pulled him back into the room to continue the attack. The three attackers and the victim tussled to the point that all fell down a nearby staircase. Once the victim finally escaped, the attack stopped. Hicks's conduct in restraining the victim inside the room and restraining him while he was beaten satisfies the elements of both felonious assault and kidnapping. More important, the state relied on that same conduct to prove both crimes. The offenses are allied offenses of similar import under the first portion of the *Johnson* test.

{¶ 17} We now turn to the question of whether Hicks's conduct was separate and distinct between the allied offenses or whether it was committed with a separate animus under the second tier of the *Johnson* test.

{¶ 18} The state makes a compelling argument that a separate animus existed the moment Hicks pulled the victim back into the room to continue the vicious assault. The problem is that the term "animus," in relation to kidnapping, does not simply end with an assessment of the mental intent of the defendant. In kidnapping scenarios, there is an additional "proximate conduct" analysis, outlined under *Logan*, that requires us to consider

the record should reflect that which is relied on for appellate review.

animus in the context of the conduct of the offender. In this instance, the felonious assault lasted the duration of the restraint, or vice versa, depending on one's perspective. While it can be argued that Hicks had to be independently conscious of his decision to restrain separate from his purpose of assaulting the victim, there was no significant disconnect between the restraint and the assault. The felonious assault subsumed the restraint. The fact that the victim had to escape from the felonious assault does not demonstrate a separate animus. We accept that the restraint occurred and the escape was necessary. The question is whether the restraint is of such significance to warrant being sentenced to a second crime. On that point, we are constrained by *Logan* and its progeny's all-or-nothing approach, which limits the phrase "separate animus" to actions that are secretive, are temporally long, and where the movement is substantial. See *State v. Sidebeh*, Franklin App. No. 10AP–331, 2011-Ohio-712.

{¶ 19} The restraint here was incidental to the commission of the underlying felonious assault. In other words, the restraint was proximate to the assault and was not remote or separate to a degree that would warrant separate punishments. While the restraint of the victim prolonged the attack, this serves to strengthen the argument for a harsher penalty, not to create a second crime. Employing the *Logan* guidelines, we find as follows: this was an arm's-length attack committed with a fist or handheld, blunt force weapon; the victim was not a willing combatant and, therefore, either some restraint was necessary to complete the assault, or the assault itself caused the restraint; the restraint only lasted the duration of the attack, a

time frame not fully established by the record; and Williams was not hidden or kept beyond the length of the attack, and without more, restraining the victim in the room would be no more secretive than assaulting him in other parts of the house. Finally, the only risk of harm stemmed from the assault itself.

{¶ 20} As in *Logan*, the restraint of Williams carried no further significance beyond facilitating the assault. The detention was brief, the movement slight, and the victim was released or escaped thereby ending the assault. The illustration offered in *Logan* is instructive:

> "Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori [sic], commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime. For example, when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery. Under our statutes, he simultaneously commits the offense of kidnapping (R.C. 2905.01(A)(2)[)] by forcibly restraining the victim to facilitate the commission of a felony. In that instance, without more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses."

*Logan*, 60 Ohio St.2d at 131-132. We see no reason to distinguish felonious assault and kidnapping under the specific facts of this case from the analysis given for aggravated robbery and kidnapping in *Logan*. Hicks's stated goal was to assault the victim. No other evidence was presented to substantiate a separate animus, and the trial court did not specify its reasons for such a finding. Although the court mentioned a "separate length of time," it is not clear from the record what length of time is being referenced.

{¶ 21} In light of the foregoing, we find that the restraint was born from and, therefore, was incidental to the felonious assault.[2] In these circumstances, we cannot say Hicks's restraint of Williams was committed with a separate animus. We understand the trial court did not have the benefit of the Supreme Court decision in *Johnson* to guide it. We must, however, find the trial court erred when it found the kidnapping and felonious assault were not allied offenses and failed to merge Hicks's convictions for both offenses. The first assignment of error is sustained.

{¶ 22} As the state correctly notes, if a court finds reversible error in the imposition of multiple punishments for allied offenses, we must reverse the sentence and remand for a new sentencing hearing at which the state will elect which allied offense it will pursue against the defendant. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25. We vacate the sentences on both the kidnapping and felonious assault counts. We remand for a new sentencing hearing consistent with and limited to this opinion.

---

[2] This is distinguished from *State v. Burton*, Cuyahoga App. No. 94449, 2011-Ohio-198, where we held that kidnapping did not merge with the aggravated robbery or felonious assault. In *Burton*, the defendant, along with four others, accosted the victim at gunpoint. The attackers went through the victim's pockets, and all but Burton returned to a waiting car. Burton slowly ran the gun up and down the prone victim and then shot him twice before walking away. Burton did not need to restrain the victim in order to shoot him, and the robbery was already completed when the restraint occurred. The restraint was a separate act occurring between the felonious assault and the robbery. The restraint was completely extraneous to the shooting.

{¶ 23} Hicks's second assignment of error is as follows: "Appellant was deprived of his property without due process of law, and his rights under the Sixth Amendment where the trial court imposed costs in his absence." Hicks's second assignment of error has merit.

{¶ 24} The failure of the court to orally notify a defendant at the sentencing hearing that it is imposing court costs on him is error. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22. A defendant must be present at every stage of his trial, including sentencing. Crim.R. 43(A). "[A] motion by an indigent criminal defendant to waive payment of costs must be made at the time of sentencing. If the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed under an abuse-of-discretion standard. Otherwise, the issue is waived and costs are res judicata." (Internal quotations and citations omitted.) *Joseph*, 125 Ohio St.3d 76, at ¶ 12. However, the defendant must be given the opportunity to claim indigency and to seek a waiver of court costs. Id. at ¶ 22. The trial court errs when it fails to orally notify a defendant that it will impose court costs, thereby providing him the required opportunity. Id.

{¶ 25} Hicks did not receive the opportunity to seek waiver of the court costs. The trial court imposed costs in the journal entry without addressing the matter at the sentencing hearing. Hicks's second assignment of error is sustained. We remand the case to the trial court to allow Hicks the option to move the court for a waiver of the payment of court costs, which if done, shall

be addressed at the sentencing hearing dictated by our resolution of the first assignment of error.

Reversed and vacated. We remand the matter to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS;
LARRY A. JONES, J., CONCURS IN JUDGMENT ONLY