[Cite as *State v. Darnell*, 2011-Ohio-3647.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 10 CAA 10 0083 |
| JEREMIAH R. DARNELL | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:       Criminal Appeal from the Court of Common
                               Pleas, Case No.  09 CR I 07 347


JUDGMENT:                      Affirmed in Part; Reversed in Part and
                               Remanded


DATE OF JUDGMENT ENTRY:        July 7, 2011


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

CAROL HAMILTON O'BRIEN                 WILLIAM T. CRAMER
PROSECUTING ATTORNEY                   470 Olde Worthington Road
BRENDAN INSCHO                         Suite 200
ASSISTANT PROSECUTOR                   Westerville, Ohio  43082
140 North Sandusky Street
Delaware, Ohio  43015

*Wise, J.*

{¶1} Defendant-appellant Jeremiah R. Darnell appeals his sentence and convictions for aggravated robbery and felonious assault, entered in the Delaware County Court of Common Pleas following a trial by jury.

{¶2} Plaintiff-appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶3} The relevant facts are as follows:

{¶4} The incident in this matter occurred on July 2, 2009, at the Sunoco gas station on Route 23 just north of the City of Delaware. On that date, at approximately 4:00 a.m., the victim in this case, who was a Sunoco employee who worked the third shift from midnight to 6:00 a.m., was busy counting a milk order when someone came around the corner of the counter and demanded money. The perpetrator had a dark-colored knife that looked like a kitchen butcher knife with a blade around six inches long. The victim was surprised and the perpetrator shoved him down before he could respond. The perpetrator checked the back room and then proceeded to go behind the counter but was unable to open the register. The victim retreated into the store and told the perpetrator to get out. The victim was unable to sound the silent alarm because the perpetrator was in the way. After failing to open the register, the perpetrator came out from behind counter and went after the victim, chasing him around some displays until the victim hit him in the face with an energy drink. (T. at 50-56, 66).

{¶5} After the perpetrator left the store, the victim sounded the silent alarm and called the police. As he waited for the police, he noticed that he had been stabbed in the lower left abdomen and he was bleeding. The victim testified that he was not sure when

the stabbing happened, but that it must have occurred when the perpetrator first approached him. The victim further stated that he did not see or hear any vehicles near the store. (T. at 50-57).

{¶6}    The victim described the perpetrator as a black male, approximately 6'1" tall and weighing approximately 200 pounds. The victim could not tell whether the perpetrator's skin was light, medium, or dark in color. The victim estimated the perpetrator's age as mid-20s based solely on his voice. The perpetrator was wearing a black hood that was up, sunglasses, and a cap. (T. at 55, 58, 86).

{¶7}    The police were unable to find any evidence around the gas station. (T. at 94). However, detectives viewed surveillance footage and saw that the bill of the perpetrator's hat said "59Fifty" and that a blue shirt was visible sticking out underneath the coat. (T. at 134). The detectives sent the surveillance video to be enhanced. (T. at 176).

{¶8}    Eventually, a K-9 officer named Argo was brought to the scene. Argo is able to track the scent of a person who has been in the area within two hours. Argo began tracking a scent, but Argo's handler admitted that they did not know who they were tracking. The scent led them westward along a tree line toward the rear of the commercial area and Appellant's apartment complex. However, Argo lost the scent in a cul-de-sac at the southwest corner of the apartment complex where there were no buildings. Argo's handler stated that it was possible that Argo lost the scent because the person they were following left from the cul-de-sac in a vehicle. (T. at 99-102, 105-107, 112-114, 116, 120).

{¶9} Detectives requested assistance from the drug task force who suggested that someone named Eric Cloud may be worth looking into. The detectives prepared a six photo array with Cloud in it, but the victim selected a different photo. (T. at 143-145, 170). The victim testified that that was strictly a guess, that the person in the picture seemed familiar, like maybe someone who comes in as a customer. (T. at 68).

{¶10} Shortly after the first photo array, the detectives received a tip from a drug task force confidential informant that Appellant Jeremiah Darnell was the perpetrator. (T. at 145-146, 211). The detectives showed the informant still photos captured from the surveillance video and the informant told the detectives that she was "pretty positive" it was Darnell. She said she recognized Darnell from his facial features, his nose in particular. The informant also indicated that she recognized the way he carried himself, the way his pants were hanging low, and the way he was holding them up with his hand. (T. at 287-291, 293, 295).

{¶11} Based on the informant's claims, the detectives prepared a second photo array with Darnell in it. (T. at 146-147). When he was shown the second array, the victim picked Darnell. The victim testified that he knew he had seen Darnell in the store before, but he told the detectives that he was not sure he was the perpetrator. Although the victim told the police that Darnell's eyes were distinctive, he admitted that he never did not get a good look at the perpetrator's face and probably did not see his eyes because he was wearing a hood, sunglasses, and a hat. (T. at 69, 80-81).

{¶12} As a result of the above identifications, Darnell was arrested at the McDonald's where he worked, which was within walking distance from the Sunoco station. Darnell was charged with aggravated robbery with a deadly weapon, in violation

of R.C. §2911.01(A)(1), felonious assault with a deadly weapon, in violation of R.C. §2903.11(A)(2), and having a weapon while under disability based on a prior violent felony conviction for attempted robbery, in violation of  R.C. §2923.13(A)(2).

{¶13} While Darnell was being processed, he asked the officer if he knew anything about the robbery at the Sunoco. Darnell also asked if the officer had heard that the "old dude" died. The officer said he hadn't heard anything about that. Darnell responded that that was probably not true or there would have been a bigger deal made over the robbery. Darnell also said that it was a black guy that did it and he hoped they were not looking at him for it because he did not do it and had been staying out of trouble. The officer who was processing Darnell had not mentioned the Sunoco robbery, and none of the other detectives involved in the arrest said anything to Darnell about the Sunoco robbery. (T. at 123-126, 149-150).

{¶14} At the time of arrest, Darnell was wearing a blue McDonald's uniform and black pants. Darnell's work shoes were black and the detectives thought they may be the same shoes from the surveillance video.

{¶15} The detectives obtained a search warrant for Appellant's apartment, which they executed shortly after his arrest. As a result of the search, the police collected black dress shoes, black pants, and a dark blue hoodie. (T. at 181-184, 186-188).  They also found a "59Fifty" hat, but it was red, not black. (T. at 185-186, 203, 311). The police also obtained a butcher's block with black handled knives. (T. at 197-198). One of the knives tested positive for blood from two unknown individuals, but did not match either the victim or Appellant. (T. at 223-231).

{¶16} At trial, the jury heard testimony from the arresting officers, investigating detectives, the evidence technician and forensic scientists with the BCI lab. The jury also heard testimony from Brian Morgan, Appellant's co-worker at McDonald's, the informant, who was an acquaintance who knew Appellant when he dated her cousin for five years, and Appellant's girlfriend Elissa Virden.

{¶17} Brian Morgan was interviewed by police along with Appellant's other co-workers, subsequent to Appellant's arrest. He told police that he overheard Appellant talking on a cellular telephone about a week before the robbery and heard him say that he was going to "hit up" the Sunoco in the evening when the old man was working. He stated that when Appellant noticed that he was listening to his conversation, he threatened to kill him if he said anything about it. (T. at 236-240). Morgan also claimed that a stranger came into the McDonald's one day after Appellant was arrested and said that he would kill Morgan if he testified against Appellant. (T. at 264-265).

{¶18} At trial, Morgan also testified that Appellant came in to work late on the morning after the robbery and seemed nervous. He further testified that Appellant arrived in street clothes, wearing white tennis shoes instead of the black ones they were supposed to wear, his shirt was not tucked in, and he was wearing loose fitting black pants. He described Appellant as being sweaty and out of breath, like he had had to run to work. Morgan did admit that Appellant was frequently late and had received previous warnings about it and that it was not unusual for Appellant to have to be told to tuck his shirt in. (T. at 240-241, 247-249).

{¶19} Morgan also recalled that on the morning before Appellant was arrested, he and his other co-workers were all talking about the robbery. When Morgan asked

Appellant about it, Appellant indicated that he would have used a bike to get away and not go on foot. (T. at 242, 251-252).

{¶20} After Morgan saw the video of the robbery, he stated that he could not tell who it was in the video, and when he asked Appellant if it was him, Appellant denied that it was him. (T. at 245-246).

{¶21} Appellant's girlfriend, Elissa Virden, who he was living with at the time of the robbery, testified that nothing unusual happened on the days in question. She also testified that Appellant never wore his McDonald's uniform if he wasn't working, and that it smelled so bad after work that he kept it in the laundry room and had to wash it every night. (T. at 368-369).

{¶22} Defense counsel asked Virden about the pair of black pants that were taken by the police and she said they were Appellant's normal size, but they were not so baggie that he had to hold them up. Virden insisted they were not the pants in the surveillance photos, they sat around his waist like normal, he wore them as work pants to McDonalds, and they were the only black pants he owned. (T. at 387-388).

{¶23} One of the detectives testified that the shirt that was visible in the surveillance video was the same color, length, and style as Darnell's McDonald's uniform. (T. at 136, 150, 152). On cross-examination, the detective admitted that the security video was poor quality and that they could only see the shirttail hanging out, but the detective still insisted it was the same color, style, and size. (T. at 155-156).

{¶24} At trial, the trial court required the prosecution to produce the informant to testify. The informant testified that she knew Appellant because he had previously been in a relationship with her cousin which lasted a number of years and that she had lived

with them for a couple months. (T. at 286-287). The informant also testified that Appellant appeared to be wearing Dickies pants in the surveillance camera photos and claimed that Appellant always wore Dickies. On cross-examination, the informant admitted that it was not possible to tell if the perpetrator is wearing Dickies in the photographs, but insisted that she recognized Appellant's face, not what he was wearing. (T. at 291, 293, 301).

**{¶25}** At trial, the victim was unable to identify Darnell as the perpetrator and said he was looking at the knife mostly, not the face. (T. at 58).

**{¶26}** The jury deliberated for an hour and a half and asked three questions: Could they view the girlfriend's grand jury testimony, hear the girlfriend's initial recorded statement to the police during the search, and hear the co-worker's testimony read back. The court denied all three requests, noting that the girlfriend's prior statements were not in evidence and the jury should rely on its memory in regard to the co-worker's testimony. The jury also requested six pairs of gloves, which the judge supplied. (T. at 460-462).

**{¶27}** On February 12, 2010, the jury returned a verdict finding Appellant guilty of the aggravated robbery and felonious assault charges. (T. at 467-468). The weapon under disability charge was severed in response to a motion by Appellant.

**{¶28}** On February 17, 2010, Appellant filed two motions for a new trial. One motion was based on a claim of prosecutorial misconduct and insufficient evidence to support the verdicts and the second motion was brought pursuant to Crim.R. 33(A)(1) for alleged irregularity in the proceedings which occurred when "articles of clothing went

back to the jury and were considered by the jury which were not entered into evidence at the trial."

{¶29} On April 1, 2010, Appellant entered a plea of guilty to the count of having a weapon while under disability.

{¶30} By Opinion and Order filed September 27, 2010, the trial court denied Appellant's motions for new trial.

{¶31} By Judgment Entry filed October 11, 2010, the trial court sentenced Appellant to five (5) years for aggravated robbery, four (4) years for felonious assault, and two (2) years for having a weapon while under disability, all of which were ordered to be served concurrently.

{¶32} Appellant now raises the following assignments of error on appeal:

ASSIGNMENTS OF ERROR

{¶33} "I. DEFENDANT'S STATE AND FEDERAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE PROSECUTION COMMITTED MISCONDUCT BY TARGETING DEFENDANT'S CHARACTER AS THE FOCAL POINT OF CLOSING ARGUMENT.

{¶34} "II. DEFENDANT'S STATE AND FEDERAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL, AND EVID.R. 403(A), WERE VIOLATED BY THE ADMISSION OF HIGHLY PREJUDICIAL EVIDENCE OF OTHER BAD ACTS COMMITTED BY DEFENDANT.

{¶35} "III. DEFENDANT'S STATE AND FEDERAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE JURY WAS GIVEN EXHIBITS THAT WERE NEVER ADMITTED INTO EVIDENCE DURING TRIAL.

**{¶36}** "IV. DEFENDANT WAS DEPRIVED OF HIS STATE AND FEDERAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL FAILED TO OBJECT TO CHARACTER EVIDENCE AND ARGUMENTS, INADVERTENTLY ELICITED SOME HIGHLY PREJUDICIAL TESTIMONY ON CROSS-EXAMINATION, AND FAILED TO PREVENT THE JURY FROM OBTAINING UNADMITTED [SIC] EXHIBITS.

**{¶37}** "V. THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL.

**{¶38}** "VI. THE TRIAL COURT VIOLATED APPELLANTS' STATE AND FEDERAL DOUBLE JEOPARDY PROTECTIONS, STATE AND FEDERAL RIGHTS TO DUE PROCESS, AND R.C. 2941.25 BY FAILING TO MERGE THE ALLIED OFFENSES OF AGGRAVATED ROBBERY IN VIOLATION OF R.C. 2911.02(A)(1) [SIC] AND FELONIOUS ASSAULT IN VIOLATION OF R.C. 2903.11(A)(2), WHICH WERE BASED ON THE SAME ACT OF VIOLENCE."

**I.**

**{¶39}** In his first assignment of error, Appellant argues that the prosecutor committed misconduct during his closing argument. We disagree.

**{¶40}** Specifically, Appellant argues that the prosecutor's argument focused on improper character attack, referring to Appellant as childish and impulsive.

**{¶41}** The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112

L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, we must review the complained of conduct in the context of the entire trial. *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

**{¶42}** Parties are given wide latitude when making their closing arguments. *State v. Hand,* 107 Ohio St.3d 378, 397, 2006–Ohio–18, citing *Lott.* The state can summarize the evidence and draw conclusions as to what the evidence shows. *Id.* at 165. However, the prosecution must avoid insinuations and assertions that are calculated to mislead the jury. *State v. Smith* (1984), 14 Ohio St.3d 13, 14. Prosecutors also may not render their personal beliefs regarding the guilt of the accused. *Id.* Nevertheless, since isolated instances of prosecutorial misconduct are usually harmless, any alleged misconduct in the closing argument must be viewed within the context of the entire trial to determine if any prejudice has occurred. See *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420.

**{¶43}** In closing arguments, the prosecutor made comments about Appellant being a grown man who worked behind the grill at McDonald's, who took advantage of his girlfriend by mooching from her, and who could not do anything right. (T. at 406-421).

**{¶44}** In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court determines whether the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "[An appellant] must show that there is a reasonable probability that but for the prosecutor's

misconduct, the result of the proceeding would have been different." *State v. Overholt,* 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47.

**{¶45}** Upon review, we find that while the statements made by the prosecutor in his closing argument were supported by testimony and evidence in the record, such statements were inappropriate as they served only as an attack on Appellant's character. However, we find any error with regard to such references to be harmless in light of the other evidence presented at trial. We further find that these statements did not so taint the proceedings that Appellant was deprived of a fair trial.

**{¶46}** Appellant's first assignment of error is overruled.

**II.**

**{¶47}** In his second assignment of error, Appellant argues that the trial court erred in admitting into evidence highly prejudicial evidence of other bad acts. We disagree.

**{¶48}** Specifically, Appellant argues that it was error for the trial court to allow references to drug use and threats made against a co-worker.

**{¶49}** In this case, the State initially elicited testimony from one of its witnesses that they had received a tip from a confidential informant of the drug task force. Upon objection and further side bar discussions, the trial court, concerned with Appellant's right to confront his witnesses, struck the testimony concerning the confidential informant and had the State bring the informant in to testify directly. The trial court further advised the jury to disregard "all of the testimony with reference that [the jury] have heard as to the drug task force and alleged confidential person." (T. at 219). The

trial court further advised the jury to "not consider it in any way, shape or form, draw no inferences from that testimony." Id.

{¶50} We initially note that the admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

{¶51} Here, we find that any statements which were made that Appellant knew someone who was an informant with a drug task force were so marginal to the actual facts in this case and the crimes alleged therein, to wit: aggravated robbery and felonious assault, that they did not prejudice the jury in this case.

{¶52} Appellant further argues that the threats he made against his co-worker should not have been disallowed as evidence of Appellant's "bad character". (Appellant's brief at 19).

{¶53} Upon review, we find Appellant's argument to be without merit. The co-worker's testimony was offered as evidence of Appellant's guilt in commission of the aggravated robbery, not as character evidence as depicted by Appellant. As such evidence was offered and allowed as proper circumstantial evidence that Appellant committed the crimes herein, we do not find that the trial court erred in allowing same.

{¶54} Accordingly, Appellant's second assignment of error is overruled.

**III.**

{¶55} In his third assignment of error, Appellant claims that his due process rights were violated when the jury was given evidence that had not been admitted at trial. We disagree.

{¶56}  In this case, three items which had not been received into evidence were submitted to the jury:  a pair of Dickie pants, dress pants, and a blue sweatshirt. The trial court questioned both parties and found that both sides agreed that these items, although never marked as exhibits, were recovered from Appellant's residence pursuant to a valid search warrant. The trial court further found that it was agreed between the parties that the State had intended to offer these items as evidence but inadvertently failed to do so.

{¶57} Upon review, we find nothing unfairly prejudicial about these items as they had been discussed and described at trial and most likely would have been properly admitted into evidence had the State offered them.

{¶58} Appellant's third assignment of error is overruled.

**IV.**

{¶59} In his fourth assignment of error, Appellant claims that he was denied the effective assistance of trial counsel. We disagree.

{¶60} Specifically, Appellant claims that his trial counsel was ineffective in failing to object to the character evidence, failed to prevent the jury from receiving the evidence which had not been admitted and further inadvertently elicited highly prejudicial testimony on cross-examination.

{¶61} The standard this issue must be measured against is set out in *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:

{¶62} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

{¶63} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

{¶64} Consistent with our ruling in the assignments of error supra, we do not find any ineffective assistance of counsel sub judice.

{¶65} Appellant's fourth assignment of error is denied.

**V**.

{¶66} In his fifth assignment of error, Appellant argues that the cumulative effect of the errors at trial deprived him of his right to a fair trial. We disagree.

{¶67} Although violations of the Rules of Evidence during trial may singularly not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprived the defendant of the constitutional right to a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, ¶ 2 of the syllabus. The *DeMarco* case involved numerous violations of the hearsay rule, which the

Supreme Court found cumulatively, resulted in prejudicial error. *Id.* at 196-197, 509 N.E.2d 1256. However, the doctrine is not applicable to cases where the court has not found multiple instances of harmless error. *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623, 1995-Ohio-168.

**{¶68}** To the extent that we have found in Appellant's case that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard,* 104 Ohio St.3d 54, 89-90, 818 N.E.2d 229, 270, 2004-Ohio-6235 at ¶ 185.

**{¶69}** In the instant case, we have not found multiple instances of error in the court's rulings on the issues raised in Appellant's previous assignments of error. Accordingly, the cumulative error doctrine does not apply.

**{¶70}** Appellant's fifth assignment of error is overruled.

**VI.**

**{¶71}** In his sixth assignment of error, Appellant argues that his double jeopardy protections were violated when the trial court failed to merge the allied offenses of aggravated robbery and felonious assault in this case. We agree.

**{¶72}** R.C. §2941.25 states as follows:

**{¶73}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶74}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶75}** Recently, the Ohio Supreme Court, in *State v. Johnson,* 128 Ohio St.3d 1405, 2010-Ohio-6314, modified the test for determining whether offenses are allied offenses of similar import. In *Johnson,* the Ohio Supreme Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson,* supra.

**{¶76}** In the case sub judice, Appellant was convicted of aggravated robbery and felonious assault.

**{¶77}** Aggravated robbery is a violation of R.C. §2911.01(A)(1), which provides:

**{¶78}** "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

**{¶79}** "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;"

**{¶80}** Appellant also was convicted of felonious assault in violation of R.C. §2903.11(A)(2.). Such section states as follows:

**{¶81}** "A) No person shall knowingly do either of the following:

**{¶82}** " ***

**{¶83}** "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

**{¶84}** Upon review, we find that in the instant case aggravated robbery and felonious assault are allied offenses of similar import.[1] Appellant committed the felonious assault when he knowingly caused serious physical harm to the victim with the butcher knife while demanding money. He committed the offense of aggravated robbery when he approached the victim and demanded money while brandishing the butcher knife. We find that the offenses were committed with the same animus.

**{¶85}** Appellant's sixth assignment of error is sustained.

---

[1] The State of Ohio concedes that these offenses are allied offenses and should have been merged.

**{¶86}** For the foregoing reasons, the judgment of the Court of Common Pleas of

Delaware County, Ohio, is affirmed in part, reversed in part and remanded to the trial

court  for further proceedings consistent with the law and this opinion

By: Wise, J.

Delaney, P. J., and

Farmer, J. concur.

_____

_____

_____

JUDGES

JWW/d 0627

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee                 :
                                       :
-vs-                                   :                JUDGMENT ENTRY
                                       :
JEREMIAH R. DARNELL                    :
                                       :
    Defendant-Appellant                :                Case No. 10 CAA 10 0083


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Costs to be split equally between the parties.


_____


_____


_____

JUDGES