[Cite as *State v. Adkins*, 2011-Ohio-5149.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95279**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL E. ADKINS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-522496

BEFORE:   Rocco, J., Stewart, P.J., and Sweeney, J.

RELEASED AND JOURNALIZED:   October 6, 2011

**ATTORNEY FOR APPELLANT**

Rufus Sims
75 Public Square
Suite 1111
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   James Hofelich
       Katherine Mullin
Assistant County Prosecutors
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶ 1}   Defendant-appellant Michael E. Adkins appeals from his convictions and the sentences imposed after a jury found him guilty of four counts of kidnapping, one count of aggravated robbery, one count of robbery, four counts of aggravated burglary, and four counts of felonious assault, all with firearm specifications.

{¶ 2}   Adkins presents three assignments of error.  He argues the trial court failed to provide a full hearing on his pre-trial request that new counsel be appointed, that his convictions were allied offenses that should have been merged pursuant to R.C. 2941.25(A), and that his trial counsel provided ineffective assistance by failing to file a motion to suppress the identification evidence presented by the state.

**{¶ 3}** Upon a review of the record, this court agrees with Adkins's argument concerning merger of his convictions. This court also finds plain error with respect to Adkins's convictions for four counts of aggravated burglary when he made entry into only one residence. Consequently, three of Adkins's convictions for aggravated burglary are vacated. With respect to his other convictions, although the jury's determinations of Adkins's guilt are affirmed, those convictions are reversed, and this case is remanded; the state to elect the offenses it wishes to pursue, and the trial court must resentence Adkins based upon the state's election. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182; see, also, *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512.

**{¶ 4}** Adkins's convictions result from an incident that occurred on October 30, 2008. Deborah Barr's landlords, Joseph and June Ament, arrived at Barr's small house at approximately noon to pick up the rent money, and Barr invited them to sit at her dining room table and chat while she watched her four-year-old grandchild.

**{¶ 5}** While Barr and the Aments were speaking, two men walked into the dining room from the kitchen; one of the men was Adkins. Barr knew him because he had dated her girlfriend, Angela. Barr "looked over at him and [saw] he had one hand in his pocket and had a gun down [to] his side."

**{¶ 6}** Initially, Barr believed he was "playing," but when she remonstrated with him that the gun was "not funny" because she had her grandchild there, Adkins put the gun to her head. He began "screaming" at her that she had "disrespected" him.

**{¶ 7}** As Adkins pointed the gun at Barr and then at her granddaughter, he ordered everyone to place all of their valuables onto the table, where Barr's rent money lay. The Aments complied. Adkins gathered up all the money while his cohort "ransacked" the rest of the house. Adkins also stated that he should kill all of them because they had seen his face.

**{¶ 8}** Eventually, Adkins ordered everyone into the living room. His cohort called out that the bedroom had a closet; Adkins began to consider putting his captives into it. Upon hearing this, Joseph Ament decided to escape. Adkins was moving the others ahead of him when Ament turned and ran into the kitchen and out the rear door. Once outside, he sought help.

**{¶ 9}** Adkins turned to discover Joseph Ament missing. He asked, "where is he?" Adkins also cried that he was going to kill everyone, but he and his cohort then fled.

**{¶ 10}** When the police arrived, Barr provided Adkins's first name and Angela's telephone number. Det. Horval spoke with Angela, assembled a photo array containing Adkins's picture, and showed it to Barr and each of the Aments separately; each chose Adkins's photo as the main perpetrator of the home invasion.

{¶ 11} In March, 2009, Adkins was indicted on fourteen counts. He was charged with four counts of kidnapping, one count of aggravated robbery, one count of robbery, four counts of aggravated burglary, and four counts of felonious assault. Each count contained a one-year and a three-year firearm specification.

{¶ 12} Adkins's case proceeded to trial in November 2009. After considering the evidence, the jury found him guilty on all counts. The trial court subsequently sentenced Adkins to a prison term that totaled twenty-three years, i.e., three years for all the firearm specifications, prior to and consecutive with consecutive terms of ten years each on Counts 1 and 2; the terms imposed on the other counts were ordered to be served concurrently with Counts 1 and 2.

{¶ 13} Adkins presents the following three assignments of error in this appeal.

{¶ 14} "I.   The trial court abused its discretion by not granting Defendant a full hearing regarding his request for new counsel prior to trial.

{¶ 15} "II.   The trial court erred in not merging the kidnapping, aggravated robbery, aggravated burglary and felonious assault convictions at sentencing.

{¶ 16} "III.   Appellant was denied the effective assistance of counsel for failure to investigate & file a motion to suppress his identification where there was reasonable probability that the successful motion would have affected the outcome."

{¶ 17} Adkins argues in his first assignment of error that the lower court failed to give full consideration to his request made before trial for a "change" of his assigned counsel. Since the record belies his argument, it is rejected.

{¶ 18} When a defendant asks the trial court for a new attorney during the course of the proceeding, the court must adequately investigate the defendant's complaint. *State v. Jones*, Montgomery App. No. 20349, 2005-Ohio-1208, at ¶12, citing *State v. Deal* (1969), 17 Ohio St.2d 17, 18-19, 244 N.E.2d 742. The court is required to balance the accused's right to counsel of his choice against the public's interest in the prompt and efficient administration of justice in evaluating a request for substitute counsel. *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765, citing *United States v. Jennings* (C.A.6, 1996), 83 F.3d 145.

{¶ 19} The trial court's decision is reviewed under an abuse-of-discretion standard. *Murphy*, citing *State v. Cowans*, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298. Only in the most extreme circumstances should appointed counsel be substituted. *State v. Glasure* (1999), 132 Ohio App.3d 227, 239, 724 N.E.2d 1165.

{¶ 20} Adkins's assigned counsel had been working on the case for nearly five months by the time trial was to proceed. Before voir dire took place, defense counsel informed the trial court that Adkins had a problem with his representation.

{¶ 21} The trial court asked Adkins if he had "any concerns," and Adkins responded, "Yeah. I'm asking for a change of counsel." The court asked, "Why?" Adkins stated, "I just don't feel that I'm being represented properly."

{¶ 22} The trial court continued to inquire of Adkins in an effort to understand his specific complaints. According to Adkins, he and defense counsel "had a couple arguments" over whether the entire incident leading to the indictment had ever occurred, and Adkins did not like the way counsel talked to him.

{¶ 23} The trial court asked if defense counsel had visited him regularly, read the police report to him, contacted Adkins's witnesses, and worked on his behalf. Adkins admitted defense counsel had done all those things. The trial court ultimately told Adkins that it was in his best interest to keep such an attorney, and asked if Adkins had anything else to say about the matter. Adkins replied, "No." Trial proceeded.

{¶ 24} On this record, it is impossible to conclude the trial court could have done anything more; Adkins's complaint related only to his counsel's perceived lack of empathy, and Adkins raised no further concerns. *State v. Satterwhite*, Montgomery App. No. 23142, 2009-Ohio-6593, at ¶41. Adkins's first assignment of error, accordingly, is overruled.

{¶ 25} In his second assignment of error, Adkins argues that some of his convictions constituted allied offenses pursuant to R.C. 2941.25(A). This court agrees. Adkins's second assignment of error, therefore, is sustained.

**{¶ 26}** R.C. 2941.25 provides:

**{¶ 27}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶ 28}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶ 29}** Subsequent to sentencing in Adkins's case, the Ohio Supreme Court issued its opinion in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. *Johnson* clarified the process by which courts determine whether offenses are allied offenses of similar import. "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id., at the syllabus.

**{¶ 30}** The supreme court held that "the intent of the General Assembly is controlling." Id. at ¶46. "We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." Id. Thus, prior to sentencing, rather than performing any hypothetical or abstract comparison of the elements of the offenses, the trial court must

determine whether the defendant committed the offenses by the same conduct. Id. at ¶47.

{¶ 31} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶ 32} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * * .

{¶ 33} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged."

{¶ 34} "Conversely, if the court determines that * * * the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. at ¶48-51 (emphasis in original; underscoring added).

{¶ 35} In this case, the facts demonstrate all of Adkins's convictions stem from his conduct in entering Barr's home uninvited and with a gun, threatening the four occupants with that firearm, ordering them to provide all their valuables, and restraining their liberty

during this episode. He committed the offenses "through a single course of conduct with a single state of mind." *State v. Bridgeman*, Champaign App. No. 2010 CA 16, 2011-Ohio-2680, ¶54.

{¶ 36} The supreme court previously determined that a defendant's violation of R.C. 2905.01(A)(2), kidnapping, and R.C. 2911.01(A)(1), aggravated robbery, are allied offenses of similar import. *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 965 N.E.2d 154. See, also, *State v. Wilson*, Cuyahoga App. No. 91971, 2010-Ohio-1196, affirmed by *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381. Similarly, the crime of kidnapping is an allied offense to the crime of felonious assault when the facts show the defendant had no separate animus in committing the crimes. Id., ¶96; see, also, *State v. Hicks*, Cuyahoga App. No. 95169, 2011-Ohio-2780, ¶18 ("In this instance, the felonious assault lasted the duration of the restraint, or vice versa, depending on one's perspective.").

{¶ 37} Based upon the analyses set forth in *Wilson*, ¶ 91-96, and, more recently, in *State v. Darnell*, Delaware App. No. 10 CAA 10 9983, 2011-Ohio-3647, ¶84, Adkins's convictions on Counts 1 through 6, viz., kidnapping, aggravated robbery, and robbery, and for felonious assault in Counts 11 through 14, constituted allied offenses, since they constituted a single course of conduct upon four separate victims. Ordering the sentences to be served concurrently does not cure the error. *Hicks*.

{¶ 38} With respect to Adkins's convictions for aggravated burglary, the following analysis applies:

{¶ 39} "Although the seriousness of a burglary offense is related to the relative risk to persons, the burglary offenses punish trespasses *into structures*. Addressing whether jurors must unanimously agree regarding the nature of the crime that the offender was intending to commit after unlawfully entering the structure, the Supreme Court concluded that unanimity was not required, because '"there is no difference in penalty irrespective of which underlying felony or combination of felonies was intended. Rather, it is [the defendant's] *single entry into the dwelling* with the requisite intent *that constitutes the crime.*"' [*State v.*] *Gardner* [, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995] at ¶ 67, quoting *State v. Hammer* (1997), 216 Wis.2d 214, 576 N.W.2d 285." *State v. Marriott*, 189 Ohio App.3d 98, 2010-Ohio-3115, 937 N.E.2d 614, ¶29 (appeal not allowed, *State v. Marriott*, 127 Ohio St.3d 1461, 2010-Ohio-6008, 938 N.E.2d 363). (Emphasis added.)

{¶ 40} In this case, Adkins made a single entry into Barr's house. Regardless of the number of people in the house, he committed that particular act with a single animus; thus, he could not be convicted for more than one count of aggravated burglary. *State v. Allen*, Cuyahoga App. No. 82618, 2003-Ohio-6908; *State v. Powers*, Cuyahoga App. No. 86365, 2006-Ohio-2458; *State v. Lynott*, Cuyahoga App. No. 89079, 2007-Ohio-5849.

{¶ 41} Should the state prevail in its argument that a defendant may be convicted on more than one count of burglary based upon the number of persons present in the residence when the defendant entered, it would turn 500 years of burglary law on its head. It would transform burglary from an offense against the sanctity of the dwelling house into an offense against the person. Logically, one of the unintended consequences of such a transformation may be that the act of burglary, which is completed as soon as the dwelling is entered with the requisite intent, will be viewed as an allied offense to the crimes the defendant commits therein. See *Bridgeman*. This court does not believe such was the legislature's intent. *Gardner*.

{¶ 42} Adkins's convictions for aggravated burglary in Counts 8, 9, and 10, therefore, are vacated.

{¶ 43} Adkins argues in his third assignment of error that his trial counsel rendered ineffective assistance, thus requiring reversal of his convictions and sentences. He contends defense counsel should have filed a motion to suppress the identification evidence introduced by the state. This court disagrees.

{¶ 44} In *State v. Hill* (1996), 75 Ohio St.3d 195, 211, 661 N.E.2d 1068, the Ohio Supreme Court stated the standard of appellate review to apply to Adkins's claim as follows:

{¶ 45} "[R]eversal of a conviction or sentence on ineffective assistance requires that the defendant show, first, that 'counsel's performance was deficient' and, second,

that 'the deficient performance prejudiced the defense * * * so as to deprive the defendant of a fair trial.' *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373."

{¶ 46} Adkins cannot show his trial counsel's performance fell below an objective standard of reasonable representation. *Bradley*, at paragraph two of the syllabus. "Counsel need not raise meritless issues." *Hill*. Counsel is thus not required to file a motion to suppress evidence in every case. *State v. Flors* (1987), 38 Ohio App.3d 133, 528 N.E.2d 950.

{¶ 47} A court is not required to suppress an identification of a suspect unless the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. *In re Henderson*, Cuyahoga App. No. 79716, 2002-Ohio-483. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but instead is the result of observations at the time of the crime. Id.

{¶ 48} In determining whether an identification is reliable, a court must consider the following: 1) the witness's opportunity to view the suspect at the time of the incident; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description; 4) the witness's certainty when identifying the suspect at the time of the confrontation; and, 5) the length of time elapsed between the crime and the identification. *State v. Waddy* (1992), 63 Ohio St.3d 424, 439, 588 N.E.2d 819.

{¶ 49} In this case, Barr testified she had met Adkins previously, had seen him on several occasions, and, approximately three days prior to the incident, he had simply walked into her house in the same manner. She further testified, and the Aments gave similar testimony, that Adkins's face was completely visible during the ordeal, and that the incident occurred over nearly a twenty-minute period. Under these circumstances, counsel's decision not to challenge the identifications made by the victims constituted a reasonable tactical choice. *State v. Price*, Cuyahoga App. No. 90308, 2008-Ohio-3454.

{¶ 50} Since Adkins cannot rebut the applicable strong presumption that counsel's conduct in this case fell within the wide range of reasonable professional assistance, his third assignment of error is overruled.

{¶ 51} Based upon this court's disposition of his second assignment of error, although the jury's determinations of Adkins's guilt of the offenses in Counts 1 through 6 and Counts 11 through 14 remain, his convictions are reversed. This case is remanded for the state to choose which of the crimes against each victim it wishes to pursue, and for a new sentencing hearing. *Whitfield*, ¶25; accord, *Wilson*, ¶13. Adkins's aggravated burglary conviction on Count 7 is affirmed, and his convictions on Counts 8, 9, and 10 are vacated.

Judgment accordingly.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR