[Cite as *State v. Helms*, 2012-Ohio-1147.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 08 MA 199 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| TARAN HELMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      On Remand from Ohio Supreme Court,
Mahoning County Common Pleas Court
Case No. 08 CR 382 A

JUDGMENT:      Convictions Affirmed.
Remanded.

APPEARANCES:
For Plaintiff-Appellee:      Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:      Atty. Gary Van Brocklin
P.O. Box 3537
Youngstown, Ohio  44513-3537


JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  March 20, 2012

WAITE, P.J.

{¶1} This appeal comes to us on remand from the Ohio Supreme Court after our prior Opinion in *State v. Helms*, 7th Dist. No. 08 MA 199, 2010-Ohio-4872 ("*Helms I*"), was partially vacated. For Appellant's first assignment of error in *Helms I*, he argued that certain of his convictions should have merged at sentencing because they should be determined to be allied offenses of similar import. We reviewed the matter under the standard set forth in *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999). The majority held that Appellant's convictions for kidnapping and aggravated robbery should not merge, but that the convictions for attempted murder and felonious assault were allied offenses and should have been merged by the trial court. The state appealed that portion of our Opinion merging Appellant's convictions for attempted murder and felonious assault, and the state's appeal was accepted for review. After the appeal in *Helms I* was filed, the Ohio Supreme Court overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Subsequently, in a summary Opinion, the Ohio Supreme Court partially vacated *Helms I* and issued the following order: "The portion of the judgment of the court of appeals addressing appellant's first assignment of error below is vacated on the authority of *State v. Johnson* * * *, and the cause is remanded to the court of appeals for application of our decision in *State v. Johnson*." *State v. Helms*, 128 Ohio St.3d 352, 2011-Ohio-738, 944 N.E.2d 233, ¶3.

{¶2} Based on the new standard of review for allied offenses of similar import set forth in *State v. Johnson*, we now overrule Appellant's first assignment of error and hold that based on the facts of this case, the crimes of attempted murder

and felonious assault are not allied offenses of similar import. The trial court was correct when it did not merge these convictions at sentencing. The judgment of the trial court is affirmed.

## Facts and Procedural History

**{¶3}** On April 3, 2008, Taran Helms and his accomplice Hattie Gilbert were indicted by the Mahoning County Grand Jury on counts of attempted murder, felonious assault, aggravated robbery, and kidnapping, as well as four accompanying firearm specifications. The charges arose from a series of events that occurred on March 24, 2008, wherein the victim, Joseph Kaluza, was robbed and shot while on the way to make a bank deposit for his employer. As he headed for the bank, a blue-gray Saturn pulled in front of his car and suddenly stopped in front of him, causing Kaluza's car to collide with the Saturn. Kaluza phoned his district manager to report the accident, then called the police. Immediately following the accident, a man came up from behind Kaluza's vehicle and shot Kaluza in the neck. The man took the deposit money, pushed Kaluza's car to a more secluded spot, and threatened to shoot Kaluza again. The man then fled on foot. Police investigations eventually led to the arrests of Appellant and Gilbert.

**{¶4}** The joint trial for Appellant and Gilbert commenced on September 15, 2008. Joseph Kaluza testified that he was a manager for a Kentucky Fried Chicken restaurant. One of his duties was to take the restaurant's deposits to the bank. While he was driving to the bank on March 24, 2008, a car decelerated suddenly in front of him. He could not stop quickly enough to avoid hitting the rear of Gilbert's

vehicle. Kaluza immediately called the police and the area manager for his restaurant. Gilbert got out of her car and asked to use Kaluza's cellular phone. After she used the phone and returned it to Kaluza she then returned to her car. Immediately thereafter, Appellant appeared at the driver's side of Kaluza's car and without warning shot Kaluza in the neck, instantly paralyzing him. Appellant walked to Gilbert's car, motioned for her to leave, then returned to Kaluza's car and, after an initial search of the vehicle, pushed it off of the main road and onto a side street in front of an abandoned house. Appellant then looked in the car for the deposit bag, which contained only $300.00. Once he found it, he said to Kaluza: "Where's the rest of the money, or I'm gonna shoot you in the head." (Tr., p. 1569.) Kaluza testified that, at that point, a man in a truck stopped next to his car and asked if Kaluza and Appellant needed help. Appellant declined the offer of assistance. Appellant then hurriedly grabbed another bag in the car (which turned out to be trash) and ran off.

{¶5} Kaluza also testified that Kimberly Helms, Appellant's mother, had worked at Kaluza's restaurant and knew the deposit procedure, but she was fired the prior spring for theft.

{¶6} Kandace Johnson testified that she lived in a house a short distance away from where the incident occurred. Johnson saw Appellant walk from Ravenwood Street onto South Avenue, the main street where the accident occurred. Helms approached Kaluza's car and fired a shot into the car without breaking his stride. Appellant went to Gilbert's car and spoke with her for a minute. Johnson saw

Appellant immediately return to Kaluza's car and start "fumbling around," by reaching into the car through the driver's side window. (Tr., p. 1611.) Johnson saw Helms push the car, turn the car off, fumble around a bit more, then push the car off of South Avenue and onto a side street, Hilton Avenue. Johnson estimated that 90 seconds elapsed between the gunshot and moving the car. Johnson saw Appellant continue to search in Kaluza's car on the front passenger's side. Johnson then saw Appellant run through a yard as tow-trucks arrived at the scene.

{¶7} Jeremy Vignon, the passerby in the truck, testified that he saw Kaluza sitting in his car shortly after the incident occurred. As he drove by, Vignon noticed that Kaluza was slumped over and bleeding. Vignon decided to turn around and go back to the scene as Appellant finished pushing the car onto Hilton. Vignon asked Appellant if he needed any help. Appellant responded that he only had a flat tire. Vignon drove off, but noticed that the car did not have a flat tire, and called the police. Vignon circled around again, and when he returned to the scene, Appellant was running through the yard and tow trucks were arriving.

{¶8} David White, a tow truck driver for Ludt's Towing, arrived on the scene as Appellant was rummaging through Kaluza's vehicle. He and Mr. Vignon both observed Appellant leave Kaluza's vehicle and run through a backyard heading north, carrying an object in his hand.

{¶9} Law enforcement officers testified regarding their investigation of the incident. Police arrived on the scene shortly after the occurrence and realized that a potential homicide had taken place. Officer Justin Coulter and a K-9 unit were called

to the scene to search the area. Coulter started the search near the spot where Kaluza's vehicle had come to rest. The dog immediately began to track a scent. His tracking first led to a firearm. Next, the dog led Officer Coulter around a fence to a black and orange jacket laying on the ground. The dog followed the scent to a footprint behind a garage, but lost the track soon after that.

{¶10} Detective Sergeant John Kelty testified that he interviewed Appellant and Gilbert after police found Appellant's wallet in Gilbert's car and after learning of Appellant's mother's prior employment at the Kentucky Fried Chicken restaurant. Gilbert admitted to police that she staged the accident so that the robbery could take place. She watched from her rearview mirror as Appellant shot Kaluza. She heard the gun go off, and saw Kaluza's head slump forward. After speaking with Helms, she drove away.

{¶11} Various items of physical and scientific evidence were admitted during trial, including a video of the accident captured by a WRTA bus; a spent shell casing from the crime scene; a gun, coat, cap, and mask from the crime scene; the Bureau of Crime Investigation's lab results, which found Appellant's DNA on the gun, coat and mask; and items retrieved from Gilbert's car, including a box of bullets and Appellant's wallet.

{¶12} Neither Appellant nor Gilbert presented a defense. The jury was charged on September 18, 2008, and on the same day it returned a verdict of guilty against both defendants. The jury convicted Appellant of attempted murder, R.C. 2923.02(A) and 2903.02, a first degree felony; felonious assault, R.C. 2903.11(A)(2),

a second degree felony; aggravated robbery, R.C. 2911.01(A)(1), a first degree felony; and kidnapping, R.C. 2905.01(A)(2), a first degree felony. The first degree felonies carried possible ten-year prison terms, and the second degree felony carried a possible eight-year prison term. The jury also convicted Appellant on the four corresponding firearm specifications, each carrying a possible three-year prison term.

{¶13} A sentencing hearing was held on September 23, 2008, and a sentencing judgment entry was filed the same day. The court imposed the maximum prison terms on each count. Appellant received ten years in prison on count one, eight years on count two, ten years on count three and ten years on count four, along with three years in prison for each of the four firearm specifications. The sentences were ordered to be served consecutively, for a total of fifty years in prison.

{¶14} On September 29, 2010, this Court affirmed Appellant's convictions but vacated his sentence. We held that the four firearm specifications must merge pursuant to R.C. 2929.14(D)(1)(b). We also held that the crimes of aggravated robbery and kidnapping were not allied offenses and did not merge. A majority of this court determined that the crimes of attempted murder and felonious assault were allied offenses under the standard set forth in *Rance* and its progeny. The matter was then remanded to the trial court for resentencing.

{¶15} Both parties filed a notice of appeal to the Ohio Supreme Court. The state appealed that portion of our Opinion merging the attempted murder and felonious assault convictions. Appellant appealed our decision that the kidnapping and aggravated robbery convictions should not merge. The Ohio Supreme Court

accepted the state's appeal, however, the Court dismissed Appellant's cross-appeal. *State v. Helms*, Slip Opinion No. 2011-Ohio-738.

**{¶16}** On December 29, 2010, the Ohio Supreme Court released *State v. Johnson*, supra, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. In *Johnson*, the Court overruled *State v. Rance*. On February 22, 2001, in a summary decision, the Ohio Supreme Court vacated that portion of *Helms I* dealing with Appellant's first assignment of error. *Helms*, supra, 128 Ohio St.3d 352, 2011-Ohio-738, 944 N.E.2d 233. The case was remanded to us to review Appellant's first assignment of error in light of the holding in *State v. Johnson*. The remainder of *Helms I* was not accepted for review by the Ohio Supreme Court and remains the law of the case. *See, e.g.*, *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 405, 659 N.E.2d 781 (1996) ("Where [the Ohio Supreme Court] refuses jurisdiction following the issuance of an opinion by a court of appeals, the court of appeals opinion becomes the law of the case.") On remand, the parties filed supplemental briefs regarding Appellant's first assignment of error, and we now proceed to our analysis on the issue.

<u>ASSIGNMENT OF ERROR NO. 1</u>

**{¶17}** "The trial court committed reversible error when it sentenced Appellant Helms to multiple sentences for allied offenses of similar import committed with a single animus, in violation of Helms' rights under the Fifth, Sixth, and Fourteenth, Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."

{¶18} In Appellant's assignment of error he challenges two aspects of his sentencing. First, Appellant contends that his sentences for aggravated robbery and kidnapping should have merged because they are allied offenses under the new standard established in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Second, Appellant contends that his sentences for attempted murder and felonious assault should also have merged as allied offenses under *Johnson*.

{¶19} We first examine whether attempted murder and felonious assault are allied offenses. The question as to whether crimes are allied offenses arises from the Double Jeopardy Clause of the Fifth Amendment, which protects individuals from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The Ohio Legislature has codified this protection in R.C. 2941.25. Under the statute, a defendant may not be punished for multiple offenses if the defendant's actions constitute allied offenses of similar import. *Id.* at syllabus.

{¶20} In *State v. Johnson*, supra, the Ohio Supreme Court overruled *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), to the extent that *Rance* called for a comparison of multiple offenses "solely in the abstract." *Johnson* at ¶44. *Rance* had attempted to create an objective standard for determining allied offenses based on comparing the statutory elements of the crimes rather than looking at the conduct of the accused. The *Rance* formula, though, sometimes led to absurd results and became unworkable. *Johnson* returned a subjective element to the review of allied offenses: "the statute instructs courts to examine a defendant's conduct—an

inherently subjective determination."  *Johnson* at ¶52.  Pursuant to the plurality

opinion in *Johnson*:

{¶21} "If the multiple offenses can be committed by the same conduct, then

the court must determine whether the offenses were committed by the same conduct,

i.e., 'a single act, committed with a single state of mind.'  *Brown*, 119 Ohio St.3d 447,

2008-Ohio-4569, 895 N.E.2d 149, at ¶50 (Lanzinger, J., dissenting).

{¶22} "If the answer to both questions is yes, then the offenses are allied

offenses of similar import and will be merged.

{¶23} "Conversely, if the court determines that the commission of one offense

will *never* result in the commission of the other, or if the offenses are committed

separately, or if the defendant has separate animus for each offense, then, according

to R.C. 2941.25(B), the offenses will not merge."  *Id.* at ¶49-51.  (Emphasis sic.)

{¶24} It is clear that the conduct of the accused must now be considered

when determining whether multiple offenses were allied offenses.  *Id.* at syllabus.

Thus, the test applied in *Johnson* is:  1) can the two offenses be committed by the

same conduct; and if so, 2) looking at the facts of the case, were the two offenses

committed by the same conduct as a single act with a single state of mind.  *Id.*  If the

answer to both questions is yes, then they are allied offenses of similar import and

must be merged.  If the acts were committed separately or with a separate animus,

they are not allied offenses.  *Id.* at ¶51.

**{¶25}** *Johnson* recognized that, due to the subjective nature of the analysis based on the facts of each case, some crimes may be allied offenses in certain cases, but not in another case under a different set of facts. *Id.* at ¶52.

**{¶26}** The *Johnson* plurality holding has been followed in eleven of the twelve appellate districts. *State v. McClendon*, 2d Dist. No. 23558, 2011-Ohio-5067; *State v. Taylor*, 3d Dist. No. 12-10-49, 2011-Ohio-5080; *State v. Humphrey*, 4th Dist. No. 10CA3150, 2011-Ohio-5238; *State v. Hight*, 5th Dist. No. 2011CA0056, 2011-Ohio-5013; *State v. Nickel*, 6th Dist. No. OT-10-004, 2011-Ohio-1550; *State v. Stoffer*, 7th Dist. No. 09-CO-1, 2011-Ohio-5133; *State. Adkins*, 8th Dist. No. 95279, 2011-Ohio-5149; *State v. McDaniel*, 9th Dist. No. 25492, 2011-Ohio-5001; *State v. Mason*, 10th Dist. Nos. 10AP-337, 10AP-342, 2011-Ohio-3301; *State v. May*, 11th Dist. No. 2010-L-131, 2011-Ohio-5233; *State v. Crosby,* 12th Dist. Nos. CA2010-10-081, CA2011-02-013, 2011-Ohio-4907. The First District seems to follow a different standard based on the general notion that a trial court must simply look at the facts of the case to see if the state relied on the same conduct to prove two offenses. *State v. Strong*, 1st Dist. Nos. C-100484, C-100486, 2011-Ohio-4947. We will join the majority of our sister districts on this issue.

**{¶27}** Turning to the first set of alleged allied offenses, attempted murder and felonious assault, to establish the elements of attempted murder, the state must prove that the defendant engaged in conduct that, if successful, would have resulted in purposely causing the death of another. R.C. 2903.02(A); R.C. 2923.02(A). To establish the elements of felonious assault, the state must prove that the defendant

knowingly caused or attempted to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2).

{¶28} The first question is whether attempted murder and felonious assault can be committed with the same conduct. The answer is yes. The conduct of pointing and shooting a gun at a person or persons can result in the death of one or more individuals, and the same conduct can also fall short of causing death but can cause physical harm. Since the answer to the first question is yes, the second question is whether the two offenses were in fact committed with the same conduct; that is, whether there was a single act committed with a single state of mind. *Johnson*, supra, at ¶49. The answer to this question fundamentally depends on a review of all of the facts of this case.

{¶29} The facts supporting attempted murder are as follows: Appellant walked up from behind Kaluza's car with a loaded gun intending to rob the victim, pointed the gun at the vicinity of Kaluza's head from very close range, and fired the gun, hitting the victim in the neck and paralyzing him. The facts supporting felonious assault are more complicated. As the dissent pointed out in *Helms I*, there are two sets of circumstances in the record where Appellant used or threatened to use a gun against Kaluza. The facts surrounding the attempted murder could be used to describe a felonious assault. Appellant walked up to Kaluza's car with a deadly weapon and fired the weapon, causing serious physical harm. If we rely on only these facts to support both charges, there is no question the two offenses are allied. However, this record clearly contains two scenarios involving a gun threat. The

record reveals a second, separate, incident establishing that after Appellant shot Kaluza, he pushed Kaluza's car to a more secluded location, rummaged through the car looking for more money, then threatened to shoot Kaluza in the head. The record reflects that Appellant continued to possess the gun used only a short time earlier, and Appellant's intent to use the weapon again is immediately apparent in this record because Kaluza had been shot once already by Appellant.

{¶30} The dissent contends that the facts of this case amount only to aggravated menacing, but this theory was rejected in *Green*: "Defendant suggests that the only conviction that the evidence could support in this case is aggravated menacing, in violation of R.C. 2903.21(A), * * *. We disagree, because the defendant, in making his threat along with his actions, took a substantial step in a course of conduct apparently planned to culminate in the commission of a crime." *Id.* at 242, fn.2. In *Green*, the threat and the action taken by the defendant were that of pointing a loaded and functioning rifle at a policeman's head, coupled with these threatening words: "If you don't have a warrant get the fuck out of my house." *Id.* at 239. The threat and action in this case consist of the actual use of the firearm resulting in a gunshot wound to the neck; a brief period of time intervening; then a threat to shoot the victim in the head along with substantial proof that the gun was loaded, operable, and was hastily discarded near the crime scene when the shooter fled. Once again, the facts in this case appear stronger than those in *Green*, and in *Green* the conviction for felonious assault was upheld.

**{¶31}** The dissent appears to concede that there would be sufficient evidence of felonious assault if the state had provided any evidence of what Appellant was doing with the gun at the time he made the threat. Given that circumstantial evidence is as valid as direct testimonial evidence in proving any element of a crime, the record contains more than sufficient, competent and credible circumstantial evidence that Appellant had the ability and intent to carry out his threat to shoot Kaluza in the head. *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492.

**{¶32}** The dissent also contends that there is a due process problem in relying on the evidence of Appellant's threat to kill Kaluza as proof of felonious assault because that set of facts does not correspond to the prosecutor's theory of the case set forth in the opening and closing arguments. The issue in a review of allied offenses, though, does not involve due process, but whether double jeopardy occurred in sentencing a person twice based on the same set of facts. Whether or not the prosecutor's theory of the case as articulated in its opening and closing remarks corresponds to the actual evidence presented is not under review when examining the record for allied offenses. Obviously, opening and closing statements are not evidence. "It is well settled that statements made by counsel in opening statements and closing arguments are not evidence." *State v. Frazier*, 73 Ohio St.3d 323, 338, 652 N.E.2d 1000 (1995). In reviewing a sentence for allied offenses, we normally look at the entire record and review the entire set of facts and circumstances as presented to the trier of fact. We do not exclude particular properly admitted facts from our consideration simply because we believe the jury was paying

more attention to the prosecutor's opening and closing remarks rather than the actual presentation of the evidence. The jury is free to match the facts presented at trial to the elements of the crime as stated in the indictment. The indictment here does not specify any facts regarding felonious assault except that Kaluza was the victim and that it occurred on March 24, 2008. The bill of particulars does not provide any further explanation about the details of felonious assault. There was no objection filed regarding the felonious assault charge in the indictment or the bill of particulars. There was no objection made to Kaluza's testimony regarding Appellant's threat to shoot him in the head. There was no clarification requested in the jury instructions about felonious assault. We find nothing in the record that would limit our normal procedure of viewing the entire record as part of the consideration in determining whether there were allied offenses. Based on the record, Appellant committed a felonious assault that is not an offense allied to any other crime in this case. Thus, the trial court properly imposed a separate sentence for that crime.

{¶33} Turning to this second set of facts, this scenario also presents us with a separate crime having a separate animus distinct from the other charges brought against Appellant. "There is no statutory or constitutional prohibition against imposing separate punishments for allied offenses or lesser included offenses if they are committed independently or with a separate animus." *State v. Hooper*, 7th Dist. No. 03 CO 30, 2005-Ohio-7084, ¶19.

{¶34} Various cases have upheld the principle that threatening to use a firearm, coupled with the act of pointing or waving a firearm at a victim, satisfies the

elements of felonious assault. *See, e.g., State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991); *State v. Seiber*, 56 Ohio St.3d 4, 564 N.E.2d 408 (1990); *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636 (1989); *State v. Ellington*, 2d Dist. No. 23828, 2010-Ohio-5280; *State v. Jackson*, 8th Dist. No. 93815, 2010-Ohio-4486. "Pointing a firearm, coupled with a threat indicating an intention to use the weapon, is sufficient to establish felonious assault. The defendant's intent to cause physical harm may be inferred from his actions under the circumstances." (Citations omitted.) *State v. Alexander*, 11th Dist. Nos. C-100593, C-100594, 2011-Ohio-4911, ¶5. In all of these cases, the determinative factor is whether the "defendant's actions were strongly corroborative of his intent to cause physical harm * * * by means of his deadly weapon." *Green*, supra, at 242.

**{¶35}** In the instant case, the record presents more compelling facts than those found in *Green* and its progeny. Regarding the threat element, the record reveals that Appellant specifically stated he was going to shoot Kaluza in the head. After Appellant made this threat, he was interrupted by a passerby, Jeremy Vignon, who stopped to ask whether Kaluza or Appellant needed help. While Appellant fled almost immediately after being interrupted by Vignon, there is no doubt that his threat was serious because he had already fired the gun at Kaluza earlier, striking him in the neck. Appellant had not previously hesitated to use the gun. He walked up behind Kaluza's car and fired at him without warning. Because Kaluza was paralyzed, thus unable to turn his head and actually see Appellant when he made the verbal threat, the record does not contain direct evidence that the gun was pointed at

Kaluza contemporaneously with the threat. This record, however, contains much more reliable evidence of Appellant's willingness and ability to shoot; he actually shot the victim shortly before threatening to do it again. Mr. Vignon interrupted the course of this crime, but the gun was retrieved near the (second) crime scene with a live round in the chamber. (Tr., p. 2024.) The gun was undeniably functional as it had been used a short time earlier. The gun was also test fired by the BCI during the investigation of the case and was found to be operational. (Tr., p. 2058.) Compared to the facts in *Green*, the facts of the instant case are much more corroborative of Appellant's intent and ability to cause physical harm to Kaluza by means of a deadly weapon.

{¶36} The main difference between the facts presented in *Green* and related cases versus the instant case is that *Green* and its progeny rely on evidence that the gun was physically pointed at the intended victim to establish intent. Here, we rely on the prior actual use of the weapon to establish intent. While Kaluza could not testify that he actually saw Appellant pointing the gun at him because he had been shot and paralyzed by Appellant earlier, the record could not be clearer that Appellant actually intended to use the gun. The *Green* body of cases rely on testimony that the gun was aimed at a potential victim as part of the corroborative evidence to establish the defendant's intent to use the weapon. It is not simply the fact that the weapon was pointed that is determinative in these types of cases, and in fact, simply pointing a gun, with no other corroboration is insufficient to establish felonious assault: "The act of pointing a deadly weapon at another, without additional evidence regarding the

actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636, (1989), syllabus. However, if pointing a weapon at a victim combined with a general threat is sufficient to establish the necessary intent to commit felonious assault, it is even more persuasive to establish the necessary intent where the defendant actually used the weapon once to seriously injure the victim, and then threatened to do it again a mere few minutes later.

**{¶37}** Turning to the counts regarding aggravated robbery and kidnapping, a similar analysis must be conducted. R.C. 2911.01(A)(1) provides the definition of aggravated robbery:

**{¶38}** "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

**{¶39}** "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

**{¶40}** Kidnapping is defined in R.C. 2905.01(A)(2) as:

**{¶41}** "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

**{¶42}** "* * *

**{¶43}** "(2) To facilitate the commission of any felony or flight thereafter[.]"

{¶44} Once again, we must first ask whether these two crimes can be committed by the same conduct. The answer is yes. Robbery of a person, by its very nature, involves to some degree holding that person by force to commit a crime. Hence, it constitutes a type of kidnapping. It has long been the law in Ohio, both before and after *Rance*, that the two crimes may be allied offenses. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979).

{¶45} The second question is whether the offenses were committed with the same conduct: whether there was a single act committed with a single state of mind. The answer here is no.

{¶46} The state established that the movement of Kaluza in his vehicle after he was shot was prolonged, secretive and independent of the other offenses. The kidnapping took place during the few minutes after Kaluza was shot. After the shooting, when Kaluza was paralyzed, Appellant went over to talk to Gilbert. When he returned to Kaluza's car, he briefly searched it, then pushed the victim's car onto a side street, where he undertook a more thorough search for the deposit bag. One witness testified that it took 90 seconds for Appellant to push the car down the street. Various witnesses established that Appellant left a helpless and paralyzed Kaluza in the car while he pushed it to a more secluded area. Any restraint or asportation of a victim may constitute a separate offense of kidnapping if it was not necessary in order to complete the robbery offense. *State v. Gore*, 131 Ohio App.3d 197, 127, 129-130, 722 N.E.2d 125 (1999). The robbery took place when Appellant first searched the car for the deposit bag. The kidnapping took place when Appellant left

a helpless Kaluza to talk to Gilbert, then moved the car from a busy main road to a more secluded street. These are two distinct factual events, and both of them can result in a criminal conviction and sentence.

**{¶47}** In addition, the record reflects a separate animus for both crimes, and separate animus provides another basis for finding that the crimes are not allied offenses subject to merger. "Animus refers to the defendant's immediate criminal motive, intent or state of mind." *Hooper*, supra, ¶15, citing *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988). When a kidnapping is committed during another crime, there exists no separate animus "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime." *Logan*, supra, at syllabus. However, "where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," there is a separate animus as to each offense. *Id.* Separate animus also exists if the restraint or movement of the victim substantially increases the risk of harm to the victim. *Id.* In this case, the movement of Kaluza was prolonged, secretive, substantial, and increased the risk of harm to the victim. Therefore, the record contains evidence of separate animus and the two crimes are not allied offenses subject to merger.

**{¶48}** Appellant's arguments are without merit pursuant to the holding of *State v. Johnson*. Therefore we overrule in its entirety Appellant's first assignment of error.

Conclusions

**{¶49}** This case was remanded to us from the Ohio Supreme Court solely for review of Appellant's first assignment of error dealing with allied offenses of similar import. Based on the holding of *State v. Johnson*, Appellant has not shown that there were allied offenses that should have been merged. The judgment of the trial court as to Appellant's convictions and sentences for attempted murder, felonious assault, aggravated robbery, and kidnapping, are affirmed. This matter must be remanded to the trial court, but only to allow the court to merge the four firearm specifications into a single firearm specification pursuant to our ruling on Appellant's second assignment of error in *Helms I*.

Vukovich, J., concurs.

DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.

DeGenaro, J., concurring in part and dissenting in part.

**{¶50}** My reasons to dissent are two-fold. First, while the syllabus in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, unanimously overruled *State v. Rance* , 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), the Ohio Supreme Court issued a splintered decision without a controlling majority opinion dictating the analysis to follow when reviewing whether multiple convictions should be merged for sentencing purposes. I would adopt the First District's analysis in *State v. Johnson*, 1st Dist. No. C-090620, 2011-Ohio-3143, rather than the analysis of the Brown plurality in *Johnson,* 128 Ohio St.3d 153, adopted by the majority. The First District's analysis is straightforward and consistent with the syllabus law in *Johnson*, whereas the Brown plurality and the majority still appear to include an abstract comparison of the elements of the offenses as part of the merger analysis. Second, principles of due process, law of the case, and the syllabus law in *Johnson* all support reaching the same conclusion here that the majority opinion in *State v. Helms*, 7th Dist. No. 08 MA 199, 2010-Ohio-4872 ("*Helms I*") did; i.e., two of the four convictions must merge for sentencing purposes.

**{¶51}** Two important preliminary points must be made. The first concerns the scope of this remand. At oral argument both counsel conceded that given the conduct-based merger analysis applied by this court in *Helms I*, *Johnson* does not have a legal effect upon the analysis on remand. In fact, the State asserted at oral argument that the present proceedings provide, in effect, an opportunity for both sides to persuade this court to re-evaluate its decision in *Helms I*, thus making the remand akin to a reconsideration proceeding. I disagree with this characterization; I believe the scope of our review on remand is much narrower.

**{¶52}** In *Helms I* the majority held:

**{¶53}** To establish the elements of attempted murder, the State must prove that the defendant engaged in conduct that, if successful, would have resulted in purposely causing the death of another. R.C. 2903.02(A); R.C. 2923.02(A). To establish the elements of felonious assault, the State must

prove that the defendant knowingly caused or attempted to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2).

**{¶54}** The State argues that we should follow the reasoning of various other Ohio districts, which have previously held that attempted murder and felonious assault are not allied offenses under the first tier of the merger analysis. However, the Ohio Supreme Court recently reviewed this very issue, and held that "[f]elonious assault as defined in R.C. 2903.11(A)(2) is an allied offense of attempted murder as defined in R.C. 2903.02(A) and 2923.02." *Williams*, supra, at paragraph two of the syllabus. Specifically, *Williams* stated:

**{¶55}** "In order to commit the offense of attempted murder as defined in R.C. 2903.02(A), one must engage in conduct that, if successful, would result in purposely causing the death of another; to commit felonious assault as defined in R.C. 2903.11(A)(2), one must cause or attempt to cause physical harm to another by means of a deadly weapon.

**{¶56}** "Considering these elements in the abstract, although they do not align exactly, when [the defendant] attempted to cause harm by means of a deadly weapon, he also engaged in conduct which, if successful, would have resulted in the death of the victim. Here, felonious assault as defined by R.C. 2903.11(A)(2) is an allied offense of attempted murder as defined in R.C. 2903.02(A) and 2923.02." Id. at ¶ 25-26.

**{¶57}** Pursuant to this authority, Helms' conviction for felonious assault, in violation of R.C. 2903.11(A)(2), and his conviction for attempted murder, in violation of R.C. 2903.02(A) and R.C. 2923.02, are allied offenses of similar import when viewed in the abstract under the first tier of the merger analysis. However, the trial court may still have been able to render separate punishment for both convictions, under the second tier of the merger analysis, if Helms committed the offenses separately or with a separate animus.

**{¶58}** Helms argues that the two offenses must merge because the wounding of Kaluza with a single gunshot forms the basis for both convictions. The State stopped at the first tier of the merger analysis, and did not provide

an animus argument for the offenses of felonious assault and attempted murder. At trial, the State's theory of the case appears to have been that Helms committed attempted murder by shooting pointblank at Kaluza, and committed felonious assault by injuring Kaluza with that shot. This theory of the case is based on prior views that attempted murder and felonious assault are not allied offenses under the first tier of the merger analysis. Now that *Williams* is the controlling law, the State's theory of the case does not support separate punishments for Helms' attempted murder and felonious assault convictions.

{¶59} * *

{¶60} Here, the gunshot fired by Helms is the act that caused physical harm to Kaluza, and it was also the act that, if successful, would have caused Kaluza's death. This cannot be differentiated into multiple incidents, and the record does not indicate that Helms inflicted any additional injury or created a substantial risk of harm that was independent from the single gunshot fired. We therefore conclude that Helms did not commit attempted murder and felonious assault separately or in a way that involved a separate animus for each offense. *Helms I* at ¶44-53.

{¶61} The majority correctly states that in *Helms I* this court analyzed Helms' merger argument pursuant to *Rance* and its progeny. However, the merger issue was resolved in *Helms I* by comparing the elements of attempted murder and felonious assault based upon the facts in the case, rather than in the abstract. Consequently, as the parties correctly conceded, *Johnson* had no practical effect here. Thus, the principle of law of the case dictates that the merger decision in *Helms I* should be reaffirmed on that basis alone.

{¶62} Second, this case requires us to consider the relevance of opening and closing statements within the context of a criminal defendant's constitutional right to due process. Although clearly not evidence, these important parts of a trial are the state's opportunity to summarize the evidence that will be presented, and then argue that the evidence it has presented proved beyond a reasonable doubt that the

defendant committed each element of the charged offenses. Opening and closing statements give both sides the opportunity to present their respective theories of the case to the jury, and to be able to prepare a defense to the other side's position. Important in civil cases, this principle is critical in criminal cases; the defendant must be able to meaningfully defend against the case presented by the state. This is particularly so given that merger determinations are no longer made in the abstract; now they are driven by the specific facts the state uses to prove the elements of each offense.

**{¶63}** I am troubled that the majority has permitted the State to change its theory of the case after the trial has been concluded and one appeal decided. The State's abandonment of its theory of the case and introduction of a distinct, unexpected and inconsistent theory violates a defendant's due process rights. *See State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶47 (1st Dist.) (advocating this legal proposition, but ultimately concluding that the state did not abandon one theory and replace it with another.) The majority seeks to confine our analysis to double jeopardy only, a perspective I find unduly myopic. The Double Jeopardy Clause gives effect to centuries-old principles of due process embedded in Anglo-American constitutional law as far back as the Magna Carta.

### Merger of Allied Offenses of Similar Import

**{¶64}** Turning first to the issue of the proper merger analysis to apply in light of the fractured *Johnson* decision, the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prohibit a defendant from being "tried twice for the same offense." This prohibition applies both to successive prosecutions and cumulative punishments. *U.S. v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

**{¶65}** Further, R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct. The statute allows the state to charge a criminal defendant with multiple, related offenses stemming from the same incident, but prohibits the imposition of multiple punishments for the same criminal conduct:

**{¶66}** Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶67}** Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them. R.C. 2941.25.

**{¶68}** Inherent in R.C. 2941.25 are competing policy considerations. The statute allows the state to charge a defendant with multiple crimes arising from the same incident. R.C. 2941.25(A). This way, even if the state is unable to prove its case on some of the charges, a conviction on others assures that criminal acts do not go unpunished. At the same time, "the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilt and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence." *Johnson*, 128 Ohio St.3d 153 at ¶43, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 242, 344 N.E.2d 133 (1976).

**{¶69}** The Ohio Supreme Court held previously in *Rance* that to determine whether two offenses are allied offenses of similar import pursuant to R.C. 2941.25(A), the elements of the offenses must be compared in the abstract without regard to the facts of the case. *Rance* at paragraph one of the syllabus. *Rance* spawned much litigation and the allied offense test went through many permutations, as described by the Court in *Johnson*:

**{¶70}** [T]his court has gone to great efforts to salvage the *Rance* standard. We have modified it and created exceptions to it in order to avoid its attendant absurd results. However, our allied-offenses jurisprudence has suffered as a consequence. Our cases currently (1) require that a trial court align the elements of the offenses in the abstract—but not too exactly ([*State v.*] *Cabrales*, [118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181]), (2)

permit trial courts to make subjective determinations about the probability that two crimes will occur from the same conduct ([*State v.*] *Winn*, [121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154]), (3) instruct trial courts to determine preemptively the intent of the General Assembly outside the method provided by R.C. 2941.25 ([*State v.*] *Brown*, [119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149]), and (4) require that courts ignore the common sense mandate of the statute to determine whether the same conduct of the defendant can be construed to constitute two or more offenses (*Rance*). The current allied-offenses standard is so subjective and divorced from the language of R.C. 2941.25 that it provides virtually no guidance to trial courts and requires constant ad hoc review by this court. *Johnson* at ¶40.

{¶71} Because the *Rance* standard had become so unworkable, the Ohio Supreme Court overruled it and was unanimous in its judgment and the syllabus language: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" *Id.* However, with regard to how courts should apply that syllabus holding, *Johnson* lacks a majority opinion, containing instead a minority and two plurality opinions.

{¶72} Justice Brown's plurality opinion sets forth the following test for how to determine whether two offenses are allied offenses of similar import subject to merger:

{¶73} Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

{¶74} In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. [*State v.*] *Blankenship*, 38 Ohio St.3d [116,] 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not

necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶75}** If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.*] *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

**{¶76}** If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶77}** Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Johnson* at ¶47-51 (Brown plurality).

**{¶78}** In other words, the Brown plurality advocates that courts first determine whether the offenses *can* be committed by the same conduct. If so, then courts must determine whether in that particular case they were committed with the same conduct and with a single animus.

**{¶79}** Justice O'Connor's plurality opinion advocates that the proper inquiry under R.C. 2941.25(A) is not whether the two offenses can be committed with the same conduct, but whether the convictions "arose from the same conduct that involves similar criminal wrongs and similar resulting harm." *Johnson* at ¶70 (O'Connor, J., concurring in judgment.) The O'Connor plurality also notes that this determination should be aided by a review of the evidence adduced at trial. *Id.* at ¶68-69.

**{¶80}** Justice O'Donnell's separate concurrence, joined by Justice Lundberg Stratton, sets forth a slightly different analysis:

**{¶81}** [T]he proper inquiry is not whether the elements align in the abstract as stated in *Rance* but, rather, whether the defendant's conduct, i.e., the actions and behavior of the defendant, results in the commission of two or more offenses of similar or dissimilar import or two or more offenses of the same or similar kind committed separately or with a separate animus as to each. See Black's Law Dictionary (9th Ed.2009) 336 ("conduct" defined as "[p]ersonal behavior, whether by action or inaction"). *Johnson* at ¶78 (O'Donnell, J., separately concurring.)

**{¶82}** While all three opinions focus on the conduct of the defendant, there are notable distinctions between them. The Brown plurality is still somewhat hypothetical in nature. The determination of "whether it is *possible* to commit one offense and commit the other with the same conduct," still appears to require an abstract comparison. *Johnson* at ¶48 (emphasis added). The O'Connor plurality directs the focus of the analysis back to the evidence adduced at trial, while also leaving open the possibility for some comparison of the elements of the offenses: "*Rance*, inasmuch as it requires a comparison of the elements of the offenses *solely* in the abstract, should be overruled." *Johnson* at ¶68-69 (emphasis added). Justice O'Connor also returns to the language of the statute, parsing out the meaning of several key terms: "allied offenses" and "of similar import." *Id.* at ¶65-68. The O'Donnell concurrence emphasizes the importance of removing abstract comparisons from the merger analysis and shifts the focus of the test onto whether the two offenses were committed separately or with a separate animus. *Johnson* at ¶78-83.

**{¶83}** It is well-established that plurality opinions are merely persuasive authority and not binding upon the lower courts. *See* S*tate ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 218, 498 N.E.2d 464 (1986), fn. 7 (Celebrezze, C.J., concurring in part and dissenting in part); *Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44, 488 N.E.2d 840 (1986), (overruled on other grounds);

*State v. Bickerstaff*, 7th Dist. No. 09 JE 33, 2011-Ohio-1345, ¶75; *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, at ¶41, fn. 2 (8th.Dist.) (discussing the impact of *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124). Thus, while this court is bound by the syllabus language in *Johnson* and can no longer analyze offenses in the abstract, the three opinions in *Johnson* only have persuasive value as would opinions from our sister districts.

**{¶84}** Turning to prior decisions of this and other districts for guidance, this court has had occasion to address *Johnson* in *Bickerstaff*, 2011-Ohio-1345, supra and *State v. Gardner*, 7th Dist. No. 10 MA 52, 2011-Ohio-2644. Neither case expressly adopted one of the *Johnson* pluralities, instead citing only to the controlling syllabus law and analyzing the defendant's conduct. *Bickerstaff* at ¶75; *Gardner* at ¶23.

**{¶85}** In *Bickerstaff,* this court had to determine whether the crimes of murder and aggravated murder should merge. After a brief gang-related altercation in a gas station with the victim earlier in the day, the defendant went to the victim's house, pulled out a firearm and shot him in the chest at close range, causing his death. The trial court failed to merge the aggravated murder and murder convictions. Because the State conceded the plain error and the fact-pattern was straightforward, this court succinctly reasoned that "the trial court committed plain error by failing to merge Bickerstaff's convictions for murder and aggravated murder" because "[t]he record reflects that Bickerstaff committed the offenses of aggravated murder and murder through the single act of shooting Longmire, and with the single state of mind." *Bickerstaff* at ¶76.

**{¶86}** In *Gardner,* this court analyzed the conduct of the defendant in more detail and determined, inter alia, that the rape and kidnapping were not allied offenses of similar import subject to merger. The defendant forced the victim, his ex-girlfriend, into his vehicle, interrogated her about the new person she was seeing, threatened her and took her to an abandoned house. Once there he slapped her, ordered her to take off her pants and called her degrading names. When a neighbor came by and asked what was going on and whether the victim wanted to leave, the

victim said no because the defendant was pointing what she assumed to be a gun at her back. The defendant then proceeded to force the victim to have sexual intercourse.

{¶87} This court concluded that the rape and kidnapping were committed with a separate animus because "the force used was more than necessary, the movement was substantial, the restraint was prolonged, and the confinement was at least attempted to be kept secret." *Id.* at ¶34. Further, we noted that there were other objectives for the kidnapping aside from the rape, including the defendant's desire to criticize the victim, warn her, and interrogate her. *Id.*

{¶88} More recently, instead of looking solely at the defendant's conduct, this court applied the two-part test advocated by Justice Brown, but did not discuss the fact that it is a plurality opinion. *State v. Stoffer*, 7th Dist. No. 09-CO-1, 2011-Ohio-5133, ¶176-183. Thus, before today, none of this court's post-*Johnson* cases have explicitly adopted one of the plurality opinions.

{¶89} A review of the approaches employed by our sister districts is also instructive. Nine districts have applied the test set forth in the Brown plurality. *See State v. Johnson*, 2d Dist. No. 24031, 2011-Ohio-2825, ¶18-23; *State v. Tatum*, 3d Dist. No. 13-10-18, 2011-Ohio-3005, ¶54-55; *State v. Abdi*, 4th Dist. No. 09CA35, 2011-Ohio-3550, ¶35-38; *State v. Lemmons*, 5th Dist. No. 10-CA-48, 2011-Ohio-3322, ¶34-38; *State v. Dority*, 6th Dist. No. E-09-027, 2011-Ohio-2438, ¶13; *State v. Smith*, 8th Dist. No. 95243, 2011-Ohio-3051, ¶74-78; *State v. Mason*, 10th Dist. Nos. 10AP-337, 10AP-342, 2011-Ohio-3301, ¶45; *State v. May*, 11th Dist. No. 2010-L-131, 2011-Ohio-5233, ¶18-19; *State v. Roy*, 12th Dist. No. CA2009-11-290, 2011-Ohio-1992, ¶10-12.

{¶90} But, there are some intra-district inconsistencies. Several panels and judges of the Eighth District have cited to the O'Connor plurality. *See Cleveland v. Go Invest Wisely L.L.C.*, 8th Dist Nos. 95178, 95181, 95179, 95182, 95180, 95447, 2011-Ohio-3461, ¶31 (Celebrezze, J., concurring); *State v. Hicks*, 8th Dist. No. 95169, 2011-Ohio-2780, ¶9. One Second District panel chose to look only to the

syllabus law and the facts of *Johnson*. *State v. Alsup*, 2d Dist. No. 23641, 2011-Ohio-3612, ¶9.

**{¶91}** The Ninth District has taken the approach of remanding to the trial court for application of *Johnson* in cases where the trial court applied *Rance* during sentencing. *See State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623, ¶81: ("We have repeatedly declined to apply *Johnson* in the first instance. See *State v. Vitt*, 9th Dist. No. 10CA0016-M, 2011-Ohio-1448, at ¶8; *State v. Maple*, 9th Dist. No. 25313, 2011-Ohio-1216, at ¶8; *State v. Washington*, 9th Dist. Nos. 10CA009767, 10CA009768, 2011-Ohio-1149, at ¶27; *State v. Brown*, 9th Dist. No. 25287, 2011-Ohio-1041, at ¶50.")

**{¶92}** It appears that the best approach is that employed by the First District, in which the court notes the absence of a controlling analysis in *Johnson* and then essentially forms its own test based upon the syllabus law:

**{¶93}** In *State v. Johnson*, the Ohio Supreme Court abandoned the abstract-elements test of *State v. Rance* and held that 'when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered.' All seven justices concurred in the syllabus overruling *Rance*. Although the justices could not reach a majority opinion with regard to the analysis that courts should use in determining whether two or more offenses are allied offenses of similar import under R.C. 2941.25(A), they uniformly agreed that the conduct of the accused must be considered. Therefore, when, as here, there has been a trial, we look to the evidence adduced at trial, and if that evidence reveals that the state relied upon the 'same conduct' to prove the two offenses, and that the offenses were committed neither separately nor with a separate animus as to each, then the defendant is afforded the protections of R.C. 2941.25, and the trial court errs by imposing separate sentences for the offenses. *State v. Johnson*, 1st Dist. No. C-090620, 2011-Ohio-3143, ¶78 (footnote citations omitted); *see, also, State v. Phelps*, 1st Dist. No. C-100096, 2011-Ohio-3144, ¶35.

{¶94} I am persuaded by the First District's analysis and would adopt that test. It is less cumbersome and less abstract than the test in the Brown plurality, and also incorporates the considerations raised by the O'Connor plurality and the O'Donnell concurrence. It provides a simple, workable test that is consistent with the controlling syllabus law in *Johnson*. If the evidence at trial demonstrates that the State relied upon the 'same conduct' to prove the two offenses, and that the offenses were committed neither separately nor with a separate animus as to each, then the defendant is afforded the protections of R.C. 2941.25 and the convictions must merge for sentencing purposes. The State must then elect which offense it will pursue for sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶20-22. Thus, I dissent from the majority's adoption of the Brown plurality analysis.

{¶95} Turning to the merits of this case, Helms' counsel primarily argues that all four convictions must merge. Conversely, the State argues that none of them merge. I concur with the majority that the aggravated robbery and kidnapping convictions do not merge. But the attempted murder and felonious assault convictions still merge as the majority held in *Helms I*. Alternatively, the aggravated robbery and felonious assault convictions should merge. I will address each in turn, but given the syllabus law in *Johnson*, two of the four convictions must be merged.

### Attempted Murder and Felonious Assault

{¶96} To establish the elements of attempted murder, the State must prove that the defendant engaged in conduct that, if successful, would have resulted in purposely causing the death of another. R.C. 2903.02(A); R.C. 2923.02(A). To establish the elements of felonious assault, the State must prove that the defendant "knowingly * * * [c]ause[d] or attempt[ed] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2).

{¶97} In its brief on remand, the State concedes that felonious assault and attempted murder are "allied offenses" under the (former) first step of the merger analysis pursuant to a pre-*Johnson* case, *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937. However, in *Williams*, the Court applied the

*Cabrales* test which required a comparison of the elements of the offense in the abstract without considering the evidence in the case, but did not require an exact alignment of those elements. *Williams* at ¶22-23. Since the majority of the *Johnson* Court agrees that elements of offenses should no longer be compared solely in the abstract, prior judicial determinations based upon the *Rance* and *Cabrales* decisions are now called into question. *See State v. Hicks*, 8th Dist. No. 95169, 2011-Ohio-2780, ¶10 ("In abandoning the use of abstract comparisons, prior judicial determinations that offenses are allied may be helpful, but are no longer dispositive.")

**{¶98}** First, the State did rely on the same conduct to prove both offenses. As a majority of this court concluded in *Helms I*, the State's sole theory of the case at trial with respect to these two charges was that Helms committed attempted murder by shooting Kaluza at point-blank range, and that Helms committed felonious assault by injuring Kaluza with *that same shot*. *Helms I* at ¶50. Notably, during the sentencing hearing the State did not argue that some separate, subsequent conduct by Helms constituted the felonious assault. The State continued to focus on Helms' single act of shooting Kaluza in the neck as the conduct underlying both offenses; its argument against merger was based *not* upon conduct but upon an abstract comparison of the element of the two offenses. And on appeal, the State maintained this theory when briefing the issue in *Helms I*.

**{¶99}** Second, the two offenses were neither committed separately nor with a separate animus. A separate animus is generally not found if the infliction of injury cannot be differentiated into more than one "incident." For example, in *State v. Sutton*, 8th Dist. No. 90172, 2011-Ohio-2249, the court concluded that the defendant "acted with one animus when he fired multiple successive shots into the car containing the four victims;" and therefore "under *Johnson* * * * the trial court erred in failing to merge the felonious assault and attempted murder convictions as to each of the four victims." *Id.* at ¶9-10. Earlier cases, which are still relevant inasmuch as they concern separate animus, include: *State v. Reid*, 2d Dist. No. 23409, 2010-Ohio-1686, ¶40 (three gunshots, one of which hit the victim, lead to the death of the victim); *State v. Minifee*, 8th Dist. No. 91017, 2009-Ohio-3089, ¶18-19, 113 (a series

of gunshots, one of which hit the victim, lead to the death of the victim); *State v. Mills*, 5th Dist. No. 2007 AP 07 0039, 2009-Ohio-1849, ¶228 (single incident of inflicting multiple head and neck injuries which were fatal). In all three cases the felonious assault and attempted murder charges merged.

{¶100} Courts have found that a separate animus existed in cases where factors such as the passage of time, creation of a "substantial independent risk of harm," or the infliction of an independent additional injury would allow a trier of fact to reasonably conclude that separate offenses were committed. *State v. Roberts*, 180 Ohio App.3d 666, 2009-Ohio-298, 906 N.E.2d 1177, ¶14 (3d Dist.). *See, e.g., State v. White*, 8th Dist. No. 10AP-34, 2011-Ohio-2364, ¶67 (where victim was "shot once in the back, and then once in the face as he lay on the ground, the trial court could, although not obligated to do so, properly draw the inference that each gunshot was impelled by a separate animus.")

{¶101} Here, the single gunshot fired by Helms is the act that caused physical harm to Kaluza, and was also the act that, if successful, would have caused Kaluza's death. This cannot be differentiated into multiple incidents, nor is there sufficient evidence in the record to indicate that Helms inflicted any additional injury or created a substantial risk of harm that was independent from the single gunshot fired. It was for these reasons that the majority in *Helms I* determined that Helms' attempted murder and felonious assault convictions must merge. Applying the First District's analysis and the syllabus language from *Johnson*, these two convictions must still merge.

{¶102} But after a trial and one appeal, the State *now* advances a new theory as to why merger of these offenses is improper—a theory that had been rejected by the majority in *Helms I,* after being advanced *for the first time by the dissent* therein. The State now contends that Helms' subsequent threat towards Kaluza after he had shot him and moved the car to a side street, constitutes a separate act of felonious assault that does not merge with the attempted murder. The record does reflect that immediately after Kaluza was shot, Helms briefly spoke to his co-defendant and then pushed Kaluza's vehicle about 300 feet to a more secluded spot where he told him:

"Where's the rest of the money, or I'm gonna shoot you in the head." This abrupt and belated modification of the State's theory of the case, co-opted from the dissent in *Helms I,* raises serious due process concerns. *Lukacs* at ¶47*.*

**{¶103}** Justice O'Connor's *Johnson* plurality aptly concludes that although there may have been alternative theories the state considered in pursuing the defendant for the crimes, "*we are constrained by the record before us and the legal arguments raised in the briefs.*" *Johnson* at ¶70 (emphasis added). We are likewise constrained, and should resolve the merger issue based upon the evidence the State put on to demonstrate its theory of the case: that attempted murder and felonious assault were committed when Helms shot Kaluza in the neck. The majority doing otherwise and resolving the issue with the State's new theory, co-opted from the *Helms I* dissent, creates due process issues.

**{¶104}** The due process ramifications are compounded when one first considers that this argument was rejected by a majority of this court in *Helms I.* Second*,* at oral argument the parties conceded that given the conduct-based merger analysis applied in *Helms I, Johnson* had no legal effect on our analysis of the propriety of merging the attempted murder and felonious assault convictions*.* Third, the State suggested at oral argument that the timing of the release of *Helms I* and *Johnson* gave the parties an opportunity to persuade this court to reconsider our decision.

**{¶105}** *Helms I* is a final judgment. The time for reconsideration of that judgment has long passed and there would have been no reason to reconsider it at the time, even had an application been filed. App. R. 26(A)(1). Given the narrow scope of our inquiry on remand, the only valid ground for changing our decision would have been if *Johnson* materially affected the merger analysis and outcome. Such is not the case here. There was no change in the law to support a different resolution of the merger issue; rather a change of heart.

**{¶106}** The cases upon which the majority relies in support of its argument that Helms' subsequent threat constitutes a distinct felonious assault are distinguishable. In *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), the

Ohio Supreme Court held: "*The act of pointing a deadly weapon at another coupled with a threat*, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2). (*State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636 [1989], syllabus, explained and followed.)" *Id.* at syllabus. In *Green*, the defendant held a rifle aimed at a police officer's head, and at the instant he positioned his weapon in the direction of the officers, shouted, "If you don't have a warrant get the f*ck out of my house." The Ohio Supreme Court held that under those facts there was sufficient evidence of a felonious assault. *Green* at 241.

**{¶107}** In *Brooks*, the Court reached the same conclusion where the defendant pointed a handgun at a woman's face during an argument and stated that he would kill her. *Brooks* at 187. Similarly, in *State v. Battle*, 5th Dist. No. 09 AP 0001, 2010-Ohio-4327, the Fifth District concluded there was sufficient evidence supporting a felonious assault conviction where the deputy testified that the defendant pointed a gun about two feet from the deputy's face and yelled "get out of my house." *Id.* at ¶99.

**{¶108}** The present case is factually distinguishable from *Brooks*, *Green* and *Battle*. In all three cases the pointing of a firearm at the victim occurred *contemporaneously* with the defendant's threat, not a few minutes before the threat was uttered. Here, as conceded by the majority at ¶35, the State failed to provide any evidence that Helms used the firearm contemporaneously with uttering his threat. These facts are insufficient to establish felonious assault. The State failed to meet its burden of proving that Helms had the criminal intent to physically harm Kaluza with his firearm, and that Helms' conduct constituted a substantial step in carrying out that intent. R.C. 2923.02; *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶95; *Green* at 240-241.

**{¶109}** The majority misconstrues the holding in *Green*. It does not run counter to my analysis; rather, it validates it. The defendant in *Green* argued that pointing the weapon without firing it was insufficient to support a felonious assault conviction. The *Green* court disagreed, holding that the pointing of the weapon

coupled with a contemporaneous threat was sufficient. *Green* at 241-242. Thus, *Green* is distinguishable. The majority concedes that there was a break in time between Helms' use of the weapon and his threat. After Helms shot Kaluza, he walked to Gilbert's car, spoke with her, returned to Kaluza's car to search for money, and then pushed Kaluza's car around the corner—all before making the threat. That time gap is not insignificant; it defeats the contemporaneous requirement inherent in *Green*, *Brooks* and *Battle*.

{¶110} Conversely, Helms' actions would constitute aggravated menacing: "knowingly caus[ing] another to *believe* that the offender will cause serious physical harm to the person or property of the other person * * *." R.C. 2903.21(A) (emphasis added). Although there is insufficient evidence for a felonious assault conviction based upon these facts, there could be sufficient evidence for aggravated menacing had the State indicted Helms on that offense; specifically, that Helms approached the victim and threatened to shoot him in the head if he did not give Helms the rest of the money. I remain unpersuaded by the majority's argument that we should infer that Helms had the firearm in his hand while he uttered the threat. Neither *Green*, *Brooks,* nor *Battle* support making such an inference. In all of these cases there was testimony that the victim saw the defendant pointing the weapon while simultaneously hearing the defendant utter threatening words. In none of these cases did the court infer that the defendant had possession of a weapon, as the majority does here.

{¶111} I find further support for my position in *State v. Lodico*, 5th Dist. No. 2005CA00318, 2006-Ohio-5714, where the court concluded aggravated menacing is an inferior offense to felonious assault: "The first question to be answered is whether the elements of aggravated menacing are identical to felonious assault. Both contain the mens rea of "knowingly" and both involve the "serious physical harm" factor. What sets the two statutory offenses apart is the apprehension perceived by the victim or victims and the motivation of the actor. In felonious assault, the actor intends to injure the victim, whereas in aggravated menacing, the actor's intent is to scare or threaten the victim." *Id.* ¶33. Reading *Lodico* together with *Green, Brooks*

and *Battle*, the defendant's intent to harm the victim manifested by using a weapon *contemporaneously* with uttering a threat is felonious assault. Conversely, the defendant's intent to create apprehension in the victim manifested by uttering a threat *without contemporaneously* pointing a weapon is aggravated menacing.

{¶112}  Because the State did not provide any evidence regarding Helms' use of the firearm at the time of making his threat, we could just as easily infer that the firearm was in the pocket of Helms' coat or pants, or that it had been flung into the yard where it was found by the police; Helms steering and pushing the car and searching for and taking the deposit bag would logically be done with two free hands. Had the State provided any evidence whatsoever regarding what Helms was doing with his firearm at the time he made the threat, a conviction for felonious assault potentially would have been established with sufficient evidence.  However, the State presented no evidence regarding that fact.

{¶113}  Therefore, a conviction for felonious assault based upon the facts relied upon by the majority is legally insufficient.  Had the State charged Helms with aggravated menacing, a conviction for that offense potentially could have been legally sufficient.  *Green, Brooks,* and *Battle,* as well as *Alexander*, cited by the majority, all hold that a felonious assault conviction is sufficient only if the defendant points a firearm at the victim *contemporaneous* with making a threat.  It is insufficient to show the previous use of a weapon, followed by a *subsequent* threat.  Making a threat in order to create apprehension in the victim without simultaneously pointing a weapon at the victim is aggravated menacing.

### Aggravated Robbery and Felonious Assault

{¶114}  Alternatively, assuming arguendo that resolving the merger issue based upon the State's new post-trial/post-direct appeal theory does not raise due process concerns, and that Helms' subsequent threat without contemporaneously pointing a weapon constitutes sufficient evidence to support a felonious assault conviction, that offense would necessarily merge with the aggravated robbery conviction.

{¶115} The aggravated robbery statute provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * *[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" R.C. 2911.01(A)(1). The felonious assault statute provides that "n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). Following the State's theory for the purposes of this argument and ignoring due process ramifications, Helms committed felonious assault when he knowingly attempted to cause physical harm to Kaluza with a firearm (by threatening to shoot him in the head) while demanding money, and committed aggravated robbery when he approached Kaluza and demanded money while threatening to shoot him in the head.

{¶116} Because the State relied upon the same conduct to prove both offenses, they must merge pursuant to *Johnson*. Further, they were committed as one course of conduct, with the same animus. *See State v. Darnell,* 5th Dist. No. 10 CAA 10 0083, 2011-Ohio-3647, ¶84 (applying *Johnson* and holding that aggravated robbery and felonious assault were allied offenses of similar import and committed with the same animus where the defendant committed the felonious assault by knowingly causing serious physical harm to the victim with a butcher knife while demanding money, and committed the offense of aggravated robbery by approaching the victim and demanding money while brandishing the butcher knife.)

{¶117} Of course, merger of these offenses was not raised as an assignment of error in the first appeal because Helms had no reason to raise it—the theory upon which the State now relies to prove felonious assault was not raised until after its emergence in the *Helms I* dissent. This quandary illustrates yet again the due process concerns that arise from the State raising a new, distinct theory in a *second* appeal. Regardless, the failure to merge felonious assault and aggravated robbery under these circumstances would constitute plain error.

**Conclusion**

**{¶118}** Contrary to the assertion of the majority, Helms did not commit attempted murder and felonious assault separately or in a way that involved a separate animus for each offense. We are constrained by the theory the State chose to pursue at trial and in the first appeal, i.e., that the act of shooting the victim once in the neck constituted the felonious assault and the attempted murder. Moreover, the evidence the majority relies upon to find Helms committed a felonious assault which survives merger with the attempted murder conviction is problematic for two reasons. First, resolving the case on a new, distinct theory from the theory originally advocated by the State at trial, sentencing and the first appeal violates due process. Second, evidence of the defendant making a threat without contemporaneously pointing a weapon at the victim is insufficient evidence to support a felonious assault conviction. While that conduct could be sufficient to prove aggravated menacing, the State failed to charge Helms with that crime. Finally, even assuming arguendo that the subsequent threat alone is sufficient evidence of felonious assault, that crime would have to merge with the aggravated robbery conviction.

**{¶119}** Therefore, while I concur with the majority that Helms' aggravated robbery and kidnapping convictions do not merge, I dissent in part, because I conclude that Helms' felonious assault and attempted murder convictions do merge. Thus, I would remand the case to the trial court for resentencing so that the State could elect to pursue either Helms' felonious assault conviction or his attempted murder conviction for sentencing purposes.